## GUARDIANSHIP OF LON HOCKER.

Barnstable. April 10, 2003. - July 10, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Guardian,* Incompetent person. *Incompetent Person. Practice, Civil,* Guardianship proceeding. *Probate Court,* Incompetent person. *Constitutional Law,* Assistance of counsel. *Due Process of Law,* Assistance of counsel. *Attorney at Law,* Attorney-client relationship, Canons of ethics.

Discussion of the nature and scope of guardianship, and of a ward's due process rights in such circumstances. [713-715]

A probate judge's order striking an attorney's notice of appearance, filed on behalf of a guardian's mentally incompetent ward, did not violate the ward's due process rights by either barring the ward from meaningful access to the courts, or depriving him of a purported ongoing right to consult with counsel about his guardianship, where no such generalized and continuing right to counsel pertained under the circumstances. [715-717]

This court concluded that Mass. R. Prof. C. 1.14, 426 Mass. 1361 (1998), imposes no affirmative duty on an attorney appointed by a judge during guardianship proceedings to continue to represent her client after the judge has adjudicated the client to be mentally incompetent, appointed a permanent guardian for the client, and vacated the appointment. [717-719]

PETITION for guardianship filed in the Barnstable Division of the Probate and Family Court Department on August 18, 1999.

A motion to strike was heard by *Robert E. Terry,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Kathy Pett Ryman* for Lon Hocker, III, & another.

*Eric K. Rasmussen (Lisa F. Sherman* with him) for the guardian.

MARSHALL, C.J. We are asked to determine whether a judge in the Probate and Family Court erred in allowing a motion of a guardian to strike the notice of appearance of an attorney, which had purportedly been filed on behalf of the guardian's mentally

incompetent ward. See G. L. c. 201, § 6.[1] The attorney, Kathy Pett Ryman, filed the appearance against the wishes of the court-appointed permanent guardian, Priscilla Claman (guardian), who is the daughter of the ward, Lon Hocker. No litigation involving either the guardian or the ward was pending when Ryman filed her appearance.[2] On appeal,[3] the ward claims that (1) despite being adjudicated mentally incompetent, he has an ongoing right to his own counsel under Massachusetts statutory and constitutional law; (2) Ryman, as his former counsel in the guardianship proceedings, has a continuing ethical duty to represent him; and (3) he is entitled to an evidentiary hearing concerning his competency to retain counsel of his choice. We transferred this case from the Appeals Court on our own motion. For the reasons set forth below, we affirm the order of the probate judge.

1. *Background.* We summarize the undisputed facts contained in the judge's written memoranda on the petition for guardianship and the motion to strike Ryman's appearance. On August 17, 1999, Claman petitioned for permanent guardianship of her father on the grounds that he had become mentally incompetent

---

[1]General Laws c. 201, § 6 (*a*), in pertinent part, states: "[I]f, after notice as provided in section seven and a hearing, the court finds that he is incapable of taking care of himself by reason of mental illness, it shall appoint a guardian of his person and estate." The statute was amended in 2002; that amendment did not affect the applicable provision. See St. 2002, c. 22, §§ 1, 2.

[2]At oral argument, Ryman represented that she filed the notice of appearance so that she could attend a meeting of the guardian, the guardian's attorney, and family members of the ward.

[3]This appeal was filed by the ward's son, Lon Hocker, III, and Attorney Ryman, acting for the ward and on her own behalf. An appeal from an order of a judge in the Probate and Family Court is governed by G. L. c. 215, § 9, which allows appeals only by a "person aggrieved by an order, judgment, decree or denial of a probate court." The son is not an aggrieved person. Cf. *Delaney* v. *Cook*, 256 Mass. 203, 204 (1926), quoting *Lawless* v. *Reagan*, 128 Mass. 592, 593 (1880) (cousin not "person aggrieved" by decree denying petition to remove guardian of minors because it nowhere appears she "has some pecuniary interest, or some personal right, which is immediately or remotely affected or concluded by the decree appealed from").

Because the guardian has not challenged whether either Ryman or the ward is a proper party to this proceeding, we need not and do not determine that issue. We note, however, that the judge's order of June 11, 2001, vacating the appointment of Ryman as Hocker's attorney nunc pro tunc to March 9, 2000, has not been appealed.

and unable to care for himself. A judge in the Barnstable Division of the Probate and Family Court appointed Claman temporary guardian. See G. L. c. 201, § 14. As temporary guardian, Claman later sought, and was granted, the authority to monitor the administration of antipsychotic medications to Hocker in accordance with a specific treatment plan, see *Rogers v. Commissioner of the Dep't of Mental Health*, 390 Mass. 489 (1983) (*Rogers*); she was not authorized to commit Hocker to long-term placement in a mental health or nursing home facility except on further order of the court. In accordance with the statute governing *Rogers* proceedings, the judge appointed Ryman to represent Hocker's interests. See S.J.C. Rule 3:10, as appearing in 416 Mass. 1306 (1993).

On March 9, 2000, following a trial in which Hocker (represented by Ryman) and his son, Lon Hocker, III (son), contested Claman's appointment as permanent guardian,[4] the judge found that Hocker, then eighty-nine years of age, suffered from multi-infarct dementia with agitation.[5] He also found that Hocker "was not capable by reason of . . . mental illness of caring for himself" and that he did "not have the present ability to make informed decisions regarding his psychiatric treatment, including, but not limited to, treatment with anti-psychotic medication and admission to a mental health hospital or institution." The judge appointed Claman permanent guardian of Hocker's person.[6] He noted that Claman had served as temporary guardian "with distinction" and concluded that she was "the most appropriate person to serve" as permanent

---

[4]Hocker's mental incompetence and need for a guardian was not contested. The parties stipulated, and the judge apparently accepted, that Hocker's wife would not be an appropriate guardian. See G. L. c. 201, § 24, which provides that the guardian of a married person, "unless authorized by the court for causes which the court considers sufficient, shall not have the care, custody or education of his ward, except in case of the mental illness of the spouse of such person." The ward's son resided in the State of Hawaii. Hocker and his son argued that Hocker's former daughter-in-law should be appointed Hocker's permanent guardian.

[5]This type of dementia is described as "a step-like deterioration in intellectual functions." Stedman's Medical Dictionary 410 (25th ed. 1990).

[6]The order of permanent guardianship was of the "person" only. Prior to the adjudication of incompetency, Hocker's "estate" had been placed in a trust administered by its trustees.

guardian. The judge declined, however, to give Claman permanent "stand by authority" to administer antipsychotic medications. The judge exhorted the family to "work together in the future to ensure that [Hocker] is able to experience the quality of life to which he is entitled." He admonished family members that they "not interfere with the guardian and care giver's ability to implement the treatment plan." There was no appeal from the guardianship decree.

Following Claman's appointment as permanent guardian and because Ryman had completed her duties relative to the guardianship proceeding, on June 11, 2001, the judge vacated Ryman's appointment nunc pro tunc to March 9, 2000, the date of the decree of permanent guardianship. The next day, June 12, 2001, Ryman filed a notice of appearance, purportedly on behalf of the ward. No pleading accompanied the notice of appearance. See note 2, *supra*. On June 18, 2001, the ward's son filed a pro se notice of appearance. On July 5, 2001, the guardian filed a motion to strike Ryman's notice of appearance, which was opposed by the son and by Ryman.[7] On August 22, 2001, following a hearing,[8] the judge allowed the guardian's motion.[9] He concluded that Hocker, as a person adjudicated mentally incompetent and in need of a permanent guardian, was unable to think or act for himself as to matters concerning his person or property and that "the level of assessment and reasoning

[7] The guardian also filed a motion for temporary orders to prevent "family members" from "interfering" with her care of the ward or his medical or legal appointments. Ryman countered with a motion to restrain the guardian from further interference with the ward's "attorney-client relationship."

[8] The ward did not attend the hearing. Ryman represented that the ward's wife had been injured in a fall the night before, and that he had chosen to stay with her.

[9] In addition to striking the notice of appearance of Ryman, the judge allowed, in part, the guardian's motion for temporary orders to prohibit family members from interfering with the guardian's plan of medical care and ordered that family members not arrange legal or medical appointments for the ward without the guardian's authorization. He denied the guardian the authority to restrict visits by social guests to the ward's home. The judge also denied the motion filed by Ryman to restrain the guardian from further interference with the ward's "attorney-client relationship." While it appears from the record that either the ward, his son, or both may have attempted to appeal from some or all of these rulings, the Appeals Court determined that orders other than those that concerned Ryman's notice of appearance were interlocutory and not immediately appealable, a point that is not contested here.

required to make informed legal decisions, exceeds Hocker's ability as diagnosed by his physicians." He noted that any concerns regarding Claman's fitness to serve as guardian could be addressed by an action to remove Claman pursuant to G. L. c. 201, § 13A.[10] Among other things, the judge ordered Ryman to refrain from contacting or having "any interactions" with the ward regarding legal matters without the guardian's knowledge and consent, or further court order. On October 31, 2001, at Ryman's request, the judge amended his order to permit Ryman to consult with the ward for the sole purpose of prosecuting this appeal, ruling that contact between Ryman and the ward should be allowed "in the interest of justice and due process" because the matter ultimately concerns the ward's liberty interests in managing his own affairs.

2. *Due process.* The ward claims that the judge's order striking Ryman's notice of appearance effectively barred him from meaningful access to the courts, in violation of his due process rights. He has "a constitutionally protected liberty interest," he asserts, "in being left free to retain counsel of his choice, despite a finding that he is incompetent to make ordinary medical decisions about his own care." The ward misapprehends the nature and scope of guardianship, and of his due process rights in these circumstances.

We reject at the outset the contention that either the scope of Claman's guardianship or the judge's determination of incompetency was limited to the ward's medical care. Nothing in the guardianship decree suggests that the guardianship of the ward's person was limited or restricted. See *Guardianship of Bassett*, 7 Mass. App. Ct. 56, 67 (1979) (judge could properly exercise his powers to appoint guardian "for limited purposes and with specified responsibilities"). The provisions in the decree stating that the guardian could not, without further court order, commit the ward to a long-term care facility or forcibly administer antipsychotic medication to him merely restate the limits of a guardian's general power, as expressed by statute and determined by prior decisions of this court. See G. L. c. 201, § 6; *Rogers* v. *Commissioner of the Dep't of Mental Health, su-*

---

[10]See note 13, *infra.*

*pra* at 491; *Guardianship of Roe*, 383 Mass. 415, 434-443 (1981).

Pursuant to G. L. c. 201, § 6, Hocker was adjudicated incompetent and in need of a permanent guardian because he was determined to be (1) incapable of taking care of himself, (2) by reason of mental illness. See *Fazio* v. *Fazio*, 375 Mass. 394, 399 (1978) (error to appoint permanent guardian where individual was not found to be incapable of taking care of himself by reason of mental illness). The judge reached that determination after a trial at which Hocker and others testified on his behalf, and in which he was represented by Ryman. That Hocker's dementia and his inability "to think or act for himself as to matters concerning his personal health, safety, and general welfare," *id.* at 403, were proved by a preponderance of the evidence is amply shown in the judge's detailed and specific findings, from which there has been no been appeal. See *Guardianship of Roe*, *supra* at 425 (detailed findings of fact must accompany determination of incompetency).

When a person is adjudicated incompetent, as Hocker has been, "[t]he necessary effect . . . is that the ward is in law . . . incapable of taking care of himself, as to all the world." *Fazio* v. *Fazio*, *supra* at 399-400, quoting *Leggate* v. *Clark*, 111 Mass. 308, 310 (1873). The permanent guardian stands in the place of the ward in making decisions about the ward's well-being, and the guardian is held to high standards of fidelity in exercising this authority for the ward's benefit.[11] See, e.g., *Dolbeare* v. *Bowser*, 254 Mass. 57, 61 (1925) (guardian's "authority and

[11]The powers and duties of a permanent guardian are laid out generally in G. L. c. 201, § 12, which provides that the "guardian of a mentally ill or mentally retarded person . . . shall have the care and custody of the person of his ward." A permanent guardian has a general authority to act for the ward, as distinguished from a temporary guardian whose power is limited to the particular emergency or harm warranting the temporary appointment. See G. L. c. 201, § 14 (*f*). Chapter 201 does not delineate the specific duties of a permanent guardian. In contrast, the Uniform Guardianship and Protective Proceedings Act (1997) contains a more specific description of the duties of a guardian of an incapacitated person: "[A] guardian shall make decisions regarding the ward's support, care, education, health, and welfare" and "shall exercise authority only as necessitated by the ward's limitations." 8A U.L.A 170 (Master ed. Supp. 2003). The Legislature recently considered, but did not enact, similar language regarding the duties of guardians contained in a comprehensive probate reform bill, based on the Uniform Probate Code,

interest extend only to such things as may be for the benefit or advantage of the ward''); *Smith* v. *Smith*, 222 Mass. 102, 106 (1915) (relationship between guardian and ward is fiduciary as matter of law). To be sure, an adjudication of incompetency under G. L. c. 201, § 6, does not obviate the need for a guardian or a judge to consult a ward's feelings or opinions on a matter concerning his care. See *Doe* v. *Doe*, 377 Mass. 272, 279 (1979). It does not make the ward any less worthy of dignity or respect in the eyes of the law than a competent person. See *Superintendent of Belchertown State Sch.* v. *Saikewicz*, 373 Mass. 728, 745 (1977). It does not deprive the ward of fundamental liberty interests. See *Guardianship of Doe*, 411 Mass. 512, 517-518, cert. denied sub nom. *Doe* v. *Gross*, 503 U.S. 950 (1992). But the rights and interests of one adjudicated to be incompetent must of necessity and "for the benefit or advantage of the ward," *Dolbeare* v. *Bowser*, *supra* at 61, often be vindicated in a manner different from that of the mentally competent. Few would disagree, for example, that a mentally incompetent person's freedom to travel could be determined by the guardian, or that the ward's freedom to engage in an occupation could be similarly restricted by the guardian.[12]

Although the ward argues that the guardian could not be the "sole authority" over the ward, and an attorney is needed to "protect" the ward from harm, the judge has selected the guardian as the individual most suitable to make decisions on the ward's behalf. That selection has not been appealed. It is

proposed by the Massachusetts and Boston Bar Associations. See 1999 House Doc. No 3691; J.H. Cross, R.D. Fleischner, & J.S.J. Elder, Guardianship and Conservatorship in Massachusetts § 2.07 (2000).

[12]A ward's legal relationship to others is altered. See, e.g, G. L. c. 108A, § 32 (1) (*a*) (if partner is declared a "lunatic," a judge may decree the dissolution of partnership); Mass. R. Civ. P. 17 (b), 365 Mass. 763 (1974) (guardian may sue or defend on behalf of ward). When adjudicated incompetent, a person may lose certain privileges and rights: a person adjudicated incompetent may not vote, G. L. c. 51, § 1, see *Guardianship of Hurley*, 394 Mass. 554 (1985); he may be unable to serve as a juror, G. L. c. 234A, § 4 (juror disqualification when "person is incapable, by reason of a . . . mental disability, of rendering satisfactory juror service"); and his driver's license may be revoked, see G. L. c. 90, § 22 (*b*) ("registrar may, after due hearing, suspend or revoke any certificate of registration or any license issued under this chapter, when he has reason to believe the holder thereof is an incompetent person to operate motor vehicles").

important to note that, contrary to Ryman's contentions, the judge's order striking her notice of appearance did nothing to limit the ward's statutory and due process rights of access to the courts. The ward and his family members remain free to challenge Claman's fitness as guardian or the ward's continued need for a permanent guardian of his person. See, e.g., G. L. c. 201, §§ 6, 13, 13A.[13]

Nor does the order deprive the ward of the ability to retain counsel as contemplated by Massachusetts law and the requirements of due process. We agree that, in certain circumstances where the guardian faces a conflict or a likelihood of conflict with a ward, Massachusetts law contemplates that the ward be represented by independent counsel.[14] Those circumstances are not present here, and they do not create a generalized and continuing "right to counsel of one's choosing" for a person

---

[13]General Laws c. 201, § 13, states: "The guardian of a mentally ill or mentally retarded person or spendthrift may be discharged by the probate court, upon the application of the ward or otherwise, when it appears that the guardianship is no longer necessary." General Laws c. 201, § 13A, provides: "A mentally ill person under guardianship or any person, agency or corporation authorized by section six to petition for the appointment of a guardian for a mentally ill person may file a petition for the removal of such guardian." General Laws c. 201, § 6, authorizes any of the following to file a petition: a parent of the ward, two or more relatives or friends of the ward, a nonprofit corporation that is authorized to act as a guardian of a mentally ill person, or any agency within the Executive Office of Health and Human Services or the boards of education or higher education.

[14]For example, the judge is required, by statute, to appoint counsel for an indigent ward when the guardian seeks to administer antipsychotic medication to the ward, G. L. c. 201, § 6 (*c*), or to commit the ward to a mental health facility, G. L. c. 201, § 6 (*b*). In addition, because the ward is one of the parties allowed to seek discharge of the guardianship if the ward is no longer incompetent, G. L. c. 201, § 13, or removal of the guardian for unsuitability, G. L. c. 201, § 13A, see *Hillman* v. *Tinsley*, 355 Mass. 785, 785 (1969), the ward may be entitled to counsel consistent with S.J.C. Rule 3:10, as appearing in 416 Mass. 1306 (1993). The interest of a guardian and a ward are perhaps at their most adverse when a petition for removal is filed, and the alleged failure of the guardian to fulfill her fiduciary duties to the ward is at issue. We need not and do not determine whether an incompetent ward could retain a lawyer himself in such circumstances. See J.H. Cross, R.D. Fleischner, & J.S.J. Elder, Guardian and Conservatorship in Massachusetts § 3.18A (Supp. 2002) ("Inasmuch as the statute allows a ward to seek removal of his or her guardian, there should at least be a presumption that the ward has the capability to retain counsel for that purpose").

adjudicated under our laws to be mentally incompetent.[15] The judge's order striking Ryman's notice of appearance merely prevents Ryman from using the cover of court imprimatur to monitor, on an ongoing basis and purportedly on the ward's behalf,[16] the activities of Claman as guardian. Given the judge's specific finding that the ward lacked the capacity because of his dementia to make reasoned legal decisions on his own behalf, as well as the judge's findings concerning the history of family tension over Claman's role as guardian, the judge's order was prudent. It was well within the judge's authority to shield an extraordinarily vulnerable individual from becoming an unknowing instrument to subvert the authority of the court-appointed permanent guardian. In short, when no adversary proceedings have been initiated, due process does not require that a ward be able to consult with counsel about his guardianship.

3. *Attorney's ethical duties.* Contrary to the ward's arguments, we conclude that Mass. R. Prof. C. 1.14, 426 Mass. 1361 (1998),[17] imposes no affirmative duty on an attorney appointed by a judge during guardianship proceedings to continue

---

[15]We have long recognized that the right to counsel of one's choice is not absolute. See, e.g., *Mailer* v. *Mailer*, 390 Mass. 371, 373-374 (1983) (regarding motion to disqualify attorney).

[16]Ryman informed the guardian that Ryman's bills for services on behalf of the ward would be paid by the son.

[17]Rule 1.14 of the Massachusetts Rules of Professional Conduct, 426 Mass. 1361 (1998), states:

"(a) When a client's ability to make adequately considered decisions in connection with the representation is impaired, whether because of minority, mental disability, or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client.

"(b) If a lawyer reasonably believes that a client has become incompetent or that a normal client-lawyer relationship cannot be maintained as provided in paragraph (a) because the client lacks sufficient capacity to communicate or to make adequately considered decisions in connection with the representation, and if the lawyer reasonably believes that the client is at risk of substantial harm, physical, mental, financial, or otherwise, the lawyer may take the following action. The lawyer may consult family members, adult protective agencies, or other individuals or entities that have authority to protect the client, and, if it reasonably appears necessary, the lawyer may seek the appointment of a guardian ad litem, conservator, or a guardian, as the case

to represent her client after the judge has adjudicated the client to be mentally incompetent, appointed a permanent guardian for the client, and vacated the appointment.

Rule 1.14 governs a lawyer's ethical duties of continued representation to a client whose reasoning has become impaired, by mental incompetence or otherwise. Comment [2] to rule 1.14 instructs the lawyer of a client who has a guardian or legal representative to "as far as possible accord the represented person the status of client, particularly in maintaining communication."[18] The ward argues that rule 1.14, as seen through the gloss of comment [2], contemplates the indefinite continuation of the attorney-client relationship after the appointment of a guardian. See comment [2] to rule 1.14. Manifestly, the rule does not contemplate the continuation of an attorney-client relationship where, as here, a judge has vacated his limited and specific appointment of the attorney. Moreover, the ward ignores the admonition of comment [3], which states: "If a legal representative has already been appointed for the client, the lawyer should ordinarily look to the representative for decisions on behalf of the client."[19] Comment [3] to

may be. The lawyer may consult only those individuals or entities reasonably necessary to protect the client's interests and may not consult any individual or entity that the lawyer believes, after reasonable inquiry, will act in a fashion adverse to the interests of the client. In taking any of these actions the lawyer may disclose confidential information of the client only to the extent necessary to protect the client's interests."

[18]"The fact that a client suffers a disability does not diminish the lawyer's obligation to treat the client with attention and respect. If the person has no guardian or legal representative, the lawyer often must act as de facto guardian. Even if the person does have a legal representative, the lawyer should as far as possible accord the represented person the status of client, particularly in maintaining communication." Comment [2] to rule 1.14.

[19]Comment [3] to rule 1.14 states: "If a legal representative has already been appointed for the client, the lawyer should ordinarily look to the representative for decisions on behalf of the client. In situations involving care of the person or property of the client, if a legal representative has not been appointed, the lawyer may consult various individuals and take the specific actions mentioned in rule 1.14(b). In particular, the lawyer may consult family members even though family members may be personally interested in the situation. If reasonable inquiry discloses that the family member will act adversely to the client's interest, the lawyer may not consult that family member. Evaluation of these considerations is a matter of professional judgment on the lawyer's part."

rule 1.14.[20] The ethical dilemma posited by the ward does not exist.

4. *Evidentiary hearing.* We reject the ward's argument that the judge erred in declining to hold an evidentiary hearing on the guardian's motion to strike Ryman's notice of appearance. The record on appeal, including the record of the hearing on the motion to strike, reveals that Ryman did not request an evidentiary hearing on the motion. She is not entitled to raise the issue for the first time on appeal. See, e.g., *Royal Indem. Co.* v. *Blakely*, 372 Mass. 86, 88 (1977); *Trustees of the Stigmatine Fathers, Inc.* v. *Secretary of Admin. & Fin.*, 369 Mass. 562, 565 (1976). Even if she had requested an evidentiary hearing, the record before us indicates the judge would have been well within his discretion to deny such a request. No underlying action was pending before the court. The ward did not attend the hearing on the motion to strike, see note 8, *supra*, and the record does not disclose that any continuance was sought to allow his attendance. The only evidence proffered on behalf of the claim that the ward had regained his ability to make decisions regarding his legal affairs was a copy of an internet posting entitled "New Possibility of Brain Cell Regeneration in Alzheimers Disease" by a support group, submitted as an exhibit to the son's affidavit. In his affidavit, moreover, the ward's son stated that he agreed that his father still needed a guardian, but proposed that he himself be named coguardian with his sister. Any indication of a change in Hocker's mental condition was thus "skimpy" and insubstantial, at best, see *Adoption of Marc*, 49 Mass. App. Ct. 798, 800 (2000), and "[w]e would be hard pressed to detect any unfairness in the manner in which the issue of relief was handled in view of the . . . failure . . . to assist the judge in any meaningful way." *Demoulas* v. *Demoulas*, 428 Mass. 555, 590 (1998), *S.C.*, 432 Mass. 43 (2000).

*Order affirmed.*

---

[20]Similarly, comment [4] discusses a lawyer's ethical obligations to prevent or rectify misconduct on the part of the guardian: "If the lawyer represents the guardian as distinct from the ward, and is aware that the guardian is acting adversely to the ward's interest, the lawyer may have an obligation to prevent or rectify the guardian's misconduct."