COMMONWEALTH vs. RICARDO NIEVES.

Middlesex. February 8, 2006. - April 27, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Sex Offender. Practice, Civil,* Sex offender. *Constitutional Law,* Sex offender. *Due Process of Law,* Sex offender, Competency to stand trial. *Incompetent Person,* Commitment. *Statute,* Construction.

Discussion of the process set forth in G. L. c. 123A, §§ 12-14, for civil commitment of an individual as a sexually dangerous person. [585-587]

This court concluded that its holding in *Commonwealth v. Knowlton,* 378 Mass. 479 (1979), prescribing substantive procedures and protections for incompetent respondents in proceedings for civil commitment as a sexually dangerous person under the now-repealed G. L. c. 123A, § 6, did not apply to a proceeding under the current G. L. c. 123A, § 12. [589-590]

This court concluded that the trial of a petition to commit an incompetent individual as a sexually dangerous person under G. L. c. 123A, § 14, did not violate principles of due process [590-591]; further, this court concluded that the statutory rights granted respondents in such proceedings, including the right to trial by jury, may generally be exercised or waived by counsel where the respondent is incompetent to do so, without the necessity of appointing a guardian ad litem [591-593].

This court concluded that civil commitment of an incompetent individual as a sexually dangerous person under G. L. c. 123A, § 14, is not unconstitutional, even where no effective treatment exists to remedy the individual's infirmity. [593-594]

This court concluded that the decision whether to seek commitment of a person under G. L. c. 123 (as a "dangerous person") or G. L. c. 123A (as a "sexually dangerous person") is reserved to the executive branch. [594]

This court concluded that due process protection for a person who is found incompetent to stand trial, and who is then adjudicated a sexually dangerous person pursuant to G. L. c. 123A, requires a reliable means of obtaining periodic reviews before a judge to require that the Commonwealth demonstrate that the individual remains sexually dangerous and in need of commitment; therefore, in order to continue the commitment of an incompetent person that the Commonwealth believes continues to be sexually dangerous, the Commonwealth must seek the appointment of a court-appointed attorney for the incompetent person before the expiration of the initial term of one year, and before the expiration of any subsequent term for which the Commonwealth seeks to continue the commitment, and such attorney may then exercise the rights of the incompetent person in regard to a proceeding. [595-598]

PETITION filed in the Superior Court Department on September 6, 2001.

A motion for trial was heard by *Elizabeth M. Fahey, J.,* and questions of law were reported by her.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Lillian Cheng,* Assistant District Attorney (*Kate Berrigan MacDougall,* Assistant District Attorney, with her) for the Commonwealth.

*Mark J. Gillis* for the defendant.

COWIN, J. Pursuant to G. L. c. 231, § 111, second par., and Mass. R. Civ. P. 64, as amended, 423 Mass. 1410 (1996), a judge in the Superior Court reported to the Appeals Court the correctness of her ruling denying the Commonwealth's motion for trial, as well as six questions pertaining to proceedings under the "sexually dangerous person" (SDP) commitment statute, G. L. c. 123A, §§ 12-14:[1]

"1. Does the Supreme Judicial Court's holding in *Commonwealth* v. *Knowlton,* 378 Mass. 479 (1979)[,] [prescribing] substantive procedures and protections for incompetent respondents in SDP proceedings under the now repealed § 6 of c. 123A, apply to a proceeding under § 12 of c. 123A?

"2. If the answer to question [number one] is in the negative, then can a petition for indeterminate commitment under §§ 12 through 14 of c. 123A proceed as against an incompetent respondent?

"3. If the answer to question [number two] is in the affirmative, then who exercises or waives the substantive rights granted respondents in petitions for their commitment for a day to life under §§ 12 through 14 of c. 123A?

"4. Can a respondent who is incompetent to participate in the therapy provided under c. 123A be civilly committed to the care of the '[t]reatment [c]enter'[?]

"5. If the person named in a petition filed pursuant to

---

[1]Other sections of G. L. c. 123A, most notably §§ 1, 9 and 15, inform our resolution of the questions presented.

the [s]exually [d]angerous [p]erson (SDP) [s]tatute, G. L. c. 123A, §§ 1-16, is incapable, by reason of incompetence, of affirmatively waiving a trial by jury, does G. L. c. 123A, § 14 (*a*)[,] require that a trial on the petition be in front of a jury?

"6. Should the Trial Court appoint a [g]uardian [ad] [l]item and utilize the 'substituted judgment' standard to determine whether a respondent, who has been found incompetent for all purposes, should exercise or waive his substantive rights including whether he should testify on his own behalf at a trial on an SDP petition?"

We transferred the case to this court on our own motion and conclude that the interpretations of repealed sections of G. L. c. 123A do not apply to the materially different sections of the statute presently in effect; that due process is not offended by proceedings to commit an incompetent person, represented by an attorney, pursuant to c. 123A; that the judge may permit an incompetent person's attorney to invoke or waive various statutory rights, including the right to a jury trial; that restraint of a sexually dangerous person within the meaning of c. 123A does not offend the defendant's Federal due process rights, even if treatment would be ineffective; that a guardian ad litem need not be appointed; and that the decision whether to seek commitment under G. L. c. 123 or c. 123A is reserved to the appropriate executive official. In order to continue the commitment of an incompetent person, if the Commonwealth believes that such person continues to be sexually dangerous, the Commonwealth must seek the appointment of a court-appointed attorney for the incompetent person before the expiration of the initial term of one year, and before the expiration of any subsequent term for which the Commonwealth seeks to continue the commitment. Such attorney may then exercise the rights of the incompetent person in regard to a proceeding.

1. *The statute.* Chapter 123A commitment is composed of "complex court proceedings," *Commonwealth* v. *Torres*, 441 Mass. 499, 507 n.11 (2004), to which certain constitutional rights available to criminal defendants do not apply, see, e.g., *Commonwealth* v. *Given*, 441 Mass. 741, 746 n.8, cert. denied, 543 U.S. 948 (2004). The statute is civil and remedial in

character, although, to be committed, one must first have been adjudicated responsible for certain sexual offenses or misconduct. See *Commonwealth* v. *Bruno*, 432 Mass. 489, 500-502 (2000). See also G. L. c. 123A, §§ 1, 14-15.

We sketch the commitment process, the particulars of which are set forth in earlier cases. See, e.g., *Commonwealth* v. *Knapp*, 441 Mass. 157, 159-165 (2004). The process begins six months prior to the release from a correctional facility of a person previously convicted of a qualifying sexual offense. G. L. c. 123A, §§ 1, 12. At that time, the agency with "jurisdiction of [the] person" notifies the Attorney General or the appropriate district attorney of the pending release. G. L. c. 123A, § 12 (*a*). If that official determines that the prisoner "is likely to be a sexually dangerous person," the official may file a petition for commitment and obtain a determination from the Superior Court whether there is probable cause for the petition to proceed. G. L. c. 123A, § 12 (*b*), (*c*).

The defendant has a right, among other things, to be represented by counsel. See G. L. c. 123A, §§ 12 (*d*) (1), 13 (*c*). If the defendant is indigent, counsel is appointed by the court. § 13 (*c*). If a prisoner is scheduled for release prior to the hearing on probable cause, he or she may be committed until the hearing, which "should commence" within a statutorily appointed time. See § 12 (*c*), (*e*); *Commonwealth* v. *Bruno*, *supra* at 513. On a determination of probable cause, the defendant is temporarily committed for evaluation by qualified examiners. § 13. The Commonwealth must move for trial on its petition within a relatively short time. §§ 13, 14. Trial is by jury "unless affirmatively waived" by the defendant. § 14 (*a*).[2]

To obtain a commitment of a sexually dangerous person, the

---

[2]General Laws c. 123A, § 14, states in pertinent part:

"(*a*) The district attorney . . . may petition the court for a trial which shall be by jury unless affirmatively waived by the person named in the petition. . . . The trial may be continued upon motion of either party for good cause shown or by the court on its own motion if the interests of justice so require, unless the person named in the petition will be substantially prejudiced thereby. . . .

"(*b*) The person named in the petition shall be entitled to the assistance of counsel and shall be entitled to have counsel appointed if he

Commonwealth must prove beyond a reasonable doubt that the defendant "suffers from a mental abnormality or personality disorder which makes [him] likely to engage in sexual offenses if not confined to a secure facility." G. L. c. 123A, § 1. If the finder of fact so concludes, a defendant is committed to the treatment center, see § 2, where he will be "held in the most appropriate level of security required to ensure protection of the public, correctional staff, himself and others," § 6A, "for an indeterminate period of a minimum of one day and a maximum of such person's natural life," § 14 (d), until discharged pursuant to his petition or that of his parents, spouse, issue, next of kin, or friend, § 9. A petition for discharge may be filed annually, and either the Commonwealth or the person committed may demand trial by jury on the issue whether the defendant remains a sexually dangerous person. Id.

2. Facts. We recite the salient facts, which are derived from the stipulated record. See Mass. R. A. P. 8 (d), 378 Mass. 932 (1979). In 1993, the defendant was convicted of violently raping a woman at the side of a public street. He served a sentence of three years, part of it in State hospitals.[3] A hospital staff member noted that he had "delusions about a female forensic evaluator . . . and difficulty controlling his sexual impulses."

is indigent . . . . In addition, the person named in the petition may retain experts or professional persons to perform an examination on his behalf. . . . The court shall inform the person named in the petition of his rights under this section before trial commences. The person named in the petition shall be entitled to have process issued from the court to compel the attendance of witnesses on his behalf. . . .

"(c) [Certain records, reports, and statements] tending to show that [the person named in the petition] is or is not a sexually dangerous person shall be admissible at the trial . . . .

"(d) If after the trial, the jury finds unanimously and beyond a reasonable doubt that the person named in the petition is a sexually dangerous person, such person shall be committed to the treatment center . . . for an indeterminate period of a minimum of one day and a maximum of such person's natural life until discharged pursuant to the provisions of section 9. . . ."

[3]He received a sentence of from six to ten years, three years to serve, the balance suspended for five years.

The defendant was twice discovered under a female patient's bed, and on another occasion was kissing female patients.

In September, 1996, the defendant was released from custody, and approximately three days later, while still on probation, he violently dragged a motorist from her car and attempted to rape her. As a result of this incident, the defendant was convicted of assault with intent to rape, assault and battery by means of a dangerous weapon, and assault and battery. He was sentenced to from five years to five years and one day on the first two indictments. A guilty finding was placed on file on the third indictment. While serving this sentence, he was cited for fifty-one disciplinary violations such as fighting, being out of place, refusing orders, and assaulting and threatening correction officers.

In September, 2001, in anticipation of the defendant's release from custody, the Commonwealth filed a petition in the Superior Court for commitment of the defendant as a sexually dangerous person. The defendant waived his right to limit preliminary confinement to ten days. Two qualified examiners evaluated him, one of whom was selected by the defendant. Both concluded that the defendant was likely to commit additional sexual offenses if not confined to a secure facility, as provided in G. L. c. 123A, § 1, although only one found that he was an SDP. The other examiner was uncertain whether the defendant's dangerousness originated from a "mental abnormality or personality disorder," as required by § 1.

At a later hearing, counsel suggested to the hearing judge that the defendant lacked competency to stand trial under § 14. After a colloquy with the defendant, the judge declared him "incompetent to proceed on this day." A qualified examiner concluded that the defendant was "compromised in his ability to assist his attorney by his limited intellectual ability (mild retardation) particularly as it relates to his ability to follow testimony, retain what he has heard, and follow instructions from his attorney." The examiner noted that "there may be some fluctuations in the degree of [the defendant's] competence to stand trial that may require an on-the-spot assessment at the time of court hearings."

After several hearings, the hearing judge found probable

cause to proceed to trial. Pursuant to § 13 (*a*), two more examiners interviewed the defendant and concluded that he was an SDP within the meaning of c. 123A. After the passage of some time,[4] the defendant was reexamined on motions of both the Commonwealth and the defense, with the same results.

The Commonwealth moved for trial pursuant to G. L. c. 123A, § 14. The reporting judge denied the motion, pending a showing that the defendant was competent to stand trial, and reported the correctness of her ruling together with the questions quoted above.[5]

3. *Discussion.* The present SDP commitment procedure, adopted in 1999, St. 1999, c. 74, §§ 3-8, is the successor to a procedure that was repealed by St. 1990, c. 150, § 304. In *Commonwealth* v. *Knowlton*, 378 Mass. 479, 487-488 (1979), this court interpreted the language of the repealed statute to preclude commitment "without first resolving the issue of [a defendant's] competence." Pursuant to the *Knowlton* case, if a defendant subject to a § 6 petition was found to be incompetent, the judge would employ procedures prescribed in the former section, such as appointment of a guardian ad litem and notification of the defendant's relatives or guardian, or the judge would continue proceedings until the defendant regained competence. *Id.* at 484-486.

The language of G. L. c. 123A, §§ 12-14, differs markedly from that of the prior statute and leaves no doubt that the Legislature intended SDP proceedings to go forward against an incompetent person without appointment of a guardian ad litem and without substantial delay. Sections 1 and 15 strongly suggest that a judge may find probable cause to proceed to trial despite incompetence and that the Legislature anticipated that

[4]At one point, the defendant was temporarily committed under the separate authority of G. L. c. 123, § 18 (*a*), providing for hospitalization of mentally ill prisoners. Staff had noted that the defendant was "extremely agitated, rocking and banging his head[,] . . . ha[d] auditory hallucinations[,] and [was] talking gibberish."

[5]We answer questions of law reported with an interlocutory finding or order pursuant to G. L. c. 231, § 111, second par., and Mass. R. Civ. P. 64, as amended, 423 Mass. 1410 (1996), only as necessary to resolve the basic issue of the correctness of the interlocutory finding or order. *Commonwealth* v. *Markvart*, 437 Mass. 331, 333 (2002), quoting *Commonwealth* v. *Bruno*, 432 Mass. 489, 493 n.5 (2000).

incompetents would be subjected to the trial procedures specified in § 14.[6] Section 15 states expressly that even if a defendant is incompetent, "the court may proceed to consider whether the person is a sexually dangerous person according to the procedures set forth in sections 13 and 14." (The latter two sections provide for process relating to temporary and indeterminate commitment, proceedings that follow the probable cause hearing.) Where the statute is clear, we interpret it as written. *West's Case*, 313 Mass. 146, 149 (1943). We are confident that the Legislature did not intend to revive the repealed sections by enacting opposite language.[7]

4. *Trial of an incompetent person.* The defendant argues that trial of a petition to commit an incompetent person under § 14 would violate principles of due process. We disagree. "Minimum due process varies with context." *Commonwealth* v. *Torres*, 441 Mass. 499, 502 (2004), quoting from *Spence* v. *Gormley*, 387 Mass. 258, 274 (1982). The inquiry is guided by the familiar three-part balancing test of *Mathews* v. *Eldridge*, 424 U.S. 319, 334-335 (1976). "Where, as here, the government [seeks to] interfere[] with an individual's protected liberty interest, we must balance the interest of the individual affected, the risk of erroneous deprivation of that interest, and the government's interest in the efficient administration of its affairs." *Commonwealth* v. *Knapp*, 441 Mass. 157, 166 (2004), citing *Mathews* v. *Eldridge, supra* at 334-335. We consider these factors.

The defendant's interest is weighty. If committed, his loss of liberty would be total. G. L. c. 123A, § 6A. Commitment is for an indeterminate period, § 14, and he has a strong interest in avoiding such commitment. However, the defendant's interest must, with appropriate safeguards, yield to the Commonwealth's

[6]The definition of "[s]exually dangerous person" found in G. L. c. 123A, § 1, states in pertinent part that such a person is one "who has been . . . charged with a sexual offense and was determined to be incompetent to stand trial." Section 15 states in pertinent part that, "[i]f a person who has been charged with a sexual offense has been found incompetent to stand trial and his commitment is sought and probable cause has been determined to exist pursuant to section 12," the judge may make the predicate factual determinations regarding the actions that would ordinarily constitute a crime. This proceeding "shall comply with all procedures specified in section 14, except with respect to trial by jury."

[7]Indeed, the defendant concedes the issue.

paramount interest in protecting its citizens. We see no reason why the public interest in committing sexually dangerous persons to the care of the treatment center must be thwarted by the fact that one who is sexually dangerous also happens to be incompetent.

The robust, adversary character of the c. 123A procedure minimizes the risk of the erroneous commitment of a person who is not sexually dangerous. The defendant has, among other things, the right to counsel, and to the appointment of counsel if necessary. §§ 12 (*d*), 13 (*c*). "Where, because of the condition of the [incompetent] person[,] . . . notice and hearing would not be effective [because the defendant is incompetent], . . . the requirements of due process may be satisfied by the appointment of counsel . . . to act for the . . . person." *Rohrer, petitioner*, 353 Mass. 282, 286 n.5 (1967). See *State ex rel. Nixon* v. *Kinder*, 129 S.W.3d 5, 9-11 (Mo. Ct. App. 2003), cert. denied, 543 U.S. 979 (2004). Cf. *In re Branch*, 890 So. 2d 322, 328-329 (Fla. Dist. Ct. App. 2004) (due process not violated by subjecting incompetent respondent to adversary proceeding if underlying facts are not susceptible to dispute).

Due process is not offended by subjecting the defendant, with the assistance of counsel, to trial of the Commonwealth's petition as provided in § 14. Nothing in this procedure "shocks the conscience." *Rochin* v. *California*, 342 U.S. 165, 172 (1952). See *Dutil, petitioner*, 437 Mass. 9, 13-15 (2002).

5. *Exercise of rights*. Chapter 123A also permits the defendant to exercise a number of statutory rights. For example, § 14 (*a*) provides for trial by jury "unless affirmatively waived by the person named in the petition." The defendant may also retain experts, § 14 (*b*); obtain process to compel the attendance of witnesses, *id.*; cross-examine adverse witnesses who testify at trial, § 13 (*d*), see *Commonwealth* v. *McGruder*, 348 Mass. 712, 716 (1965), cert. denied, 383 U.S. 972 (1966); *Commonwealth* v. *Bradway*, 62 Mass. App. Ct. 280, 289 (2004); and present evidence in his defense, § 14 (*c*), see *McHoul, petitioner*, 445 Mass. 143, 146-147 & n.2 (2005). Obviously, to assure equal treatment of incompetents, a person in such condition must be allowed some opportunity to benefit from these rights just as a competent person would. See *Baxstrom* v. *Herold*,

383 U.S. 107, 110-111 (1966). Thus, some person must be authorized to exercise these rights.

We think the rights granted by c. 123A may generally be exercised by counsel where the defendant is incompetent to do so. See *Commonwealth* v. *Hatch,* 438 Mass. 618, 626 (2003) (attorney will present evidence on behalf of incompetent defendant in hearing under G. L. c. 123, § 17 [*b*]). When a client is suffering from a mental disability and "has no guardian or legal representative, the lawyer often must act as de facto guardian." Mass. R. Prof. C. 1.14 comment [2], 426 Mass. 1361 (1998). See *Guardianship of Hocker,* 439 Mass. 709, 718 & n.18 (2003). This is such a situation.

The choices provided a defendant are quintessentially the types of choices that attorneys regularly make with respect to their competent clients. Here, the defendant's counsel has, among other things, argued motions to dismiss the Commonwealth's petition, moved to continue proceedings, moved several times for funds for psychiatric evaluations under § 14, and moved for a competency evaluation. We see no reason why exercise of the defendant's choice to request a bench trial should be any different. In the circumstances, to the extent possible, the attorney should counsel the defendant as to the choice most likely to defeat the petition for commitment and invoke the procedure appropriate to do so.

There are safeguards in place should an attorney fail to act effectively. Counsel exercises the defendant's procedural rights in the presence of the court. Cf. *Guardianship of Hocker, supra* at 711, 717 (judge may strike appearance of ward's appointed attorney). The judge may refer improper conduct to the Board of Bar Overseers for disciplinary action. *Beit* v. *Probate & Family Court Dep't,* 385 Mass. 854, 861 n.13 (1982). Other lawyers have an obligation to report any "serious violations of ethical duty." Mass. R. Prof. C. 8.3 comment [1], 426 Mass. 1436 (1998). "Reporting a violation is especially important where the victim is unlikely to discover the offense." *Id.*

. The Commonwealth argues that a guardian ad litem should be appointed to exercise or waive the defendant's rights based

on a "substituted judgment" procedure.[8] We disagree. As discussed above, c. 123A no longer expressly provides for appointment of a guardian ad litem. Nor does due process require the appointment of a guardian in the ordinary case. See *Rohrer, petitioner, supra* at 286 n.5. In an extraordinary case, the inherent or statutory power of a court to appoint a guardian may be exercised.[9] On this record, the appointment of a guardian ad litem is not constitutionally required at this stage of the proceedings.[10]

6. *Ineffective treatment.* The defendant argues that it would be unconstitutional to commit an individual for treatment he is not able to utilize. He concedes that "amenability to treatment is not a [constitutionally mandated] precondition to commitment" under *Kansas* v. *Hendricks*, 521 U.S. 346, 366 (1997), but argues that "permanent detention" of "certain mentally disordered persons" solely for the purpose of protecting the public is unconstitutional.[11] We disagree.

In *Kansas* v. *Hendricks*, *supra* at 366, the Supreme Court

[8]Counsel for the defendant expressly "takes no position" on whether the court should appoint a guardian ad litem.

[9]A judge has inherent authority to appoint a guardian ad litem. *Sullivan* v. *Judges of the Superior Court*, 271 Mass. 435, 437 (1930). In addition, pursuant to a general statute, a judge may appoint a guardian if, unlike this case, there is some question whether an incompetent person "may be or may become interested . . . in the enforcement or defense of any legal rights." G. L. c. 201, § 34. See *Commonwealth* v. *DelVerde*, 398 Mass. 288, 294 (1986) ("procedure vindicates the incompetent's common law interest in being free from nonconsensual invasion" of interests).

[10]This case is unlike *Superintendent of Belchertown State Sch.* v. *Saikewicz*, 373 Mass. 728, 729-732, 746-747, 752-754 (1977), where the judge appointed a guardian ad litem to aid him in applying a "substituted judgment" whether a permanently and profoundly incompetent person in the Commonwealth's care, diagnosed with an incurable and life-threatening disease, should be subjected to dangerous and unpleasant life-prolonging treatment. There was a live question in the case as to the ward's likely preferences. *Id.* at 752-754. In contrast, the proceedings here are involuntary and have no relation to voluntary commitment and treatment.

[11]The defendant does not cite any authority relating to the Massachusetts Declaration of Rights, and we deem any argument on it to be waived. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

In addition, there is facial tension between the defendant's argument and his concession that "amenability to treatment is not a [constitutionally mandated] precondition to commitment." We address the argument only briefly, as it is resolved by recent cases.

stated that it had "never held that the Constitution prevents a State from civilly detaining those for whom no treatment is available, but who nevertheless pose a danger to others." "[I]t would be of little value to require treatment as a precondition for civil confinement of the dangerously insane when no acceptable treatment existed." *Id.* A dangerous person, particularly one for whom "no acceptable treatment existed," *id.*, may be committed in the interest of public health and safety on a determination that the person "suffer[s] from a volitional impairment rendering [the person] dangerous beyond [his or her] control." *Id.* at 358.

The standard in G. L. c. 123A, § 14 (*d*), suffices for purposes of *Kansas* v. *Hendricks, supra. Dutil, petitioner,* 437 Mass. 9, 14-19 (2002). Section 14 (*d*) provides for commitment where a defendant "suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility." See § 1 ("[s]exually dangerous person" defined). Commitment to protect the public pursuant to § 14 is not improper under the *Hendricks* standard, even where no effective treatment exists to remedy the defendant's infirmity.

7. *"Dangerous person" statute.* The defendant argues that the Commonwealth should have requested commitment pursuant to the authority of a separate statute, G. L. c. 123, §§ 7-9, instead of G. L. c. 123A. The separate provisions of c. 123 relate to commitment of "dangerous persons." The defendant argues that an action to commit pursuant to c. 123 would have been preferable because c. 123A has a "more lenient definition . . . of illness" and an ostensibly narrower definition of dangerousness, and commitments under c. 123 automatically expire, with the burden on the detaining authority to seek recommitment.

We think this argument evidences a misapprehension of the role of this court. "[M]any SDPs could be proceeded against under either statute." *Andrews, petitioner,* 368 Mass. 468, 480 (1975). The determination whether to seek commitment pursuant to chapter 123 or chapter 123A is reserved to the executive branch. See art. 30 of the Massachusetts Declaration of Rights. In addition, to the extent the defendant argues that c. 123A is constitutionally infirm because it requires the submission of a

petition to initiate postcommitment judicial review while c. 123 does not, see *Andrews, petitioner, supra* at 480, "we have already determined that this difference in procedure does not violate equal protection." *Dutil, petitioner, supra* at 21, citing *Thompson, petitioner,* 394 Mass. 502, 507-508 (1985). It does give rise to due process concerns, however, which we address below.

Although we conclude that the decision whether to seek commitment of a person under G. L. c. 123 or G. L. c. 123A is reserved to the appropriate official, there is one aspect of G. L. c. 123A, as it applies to persons who are found incompetent, that warrants further comment. It pertains to the availability of the safeguards afforded under the statute after the incompetent person has been found sexually dangerous and implicates due process concerns with respect to the continuation of commitment.

A person who is found incompetent to stand trial, and is then adjudicated a sexually dangerous person pursuant to G. L. c. 123A, faces "an indeterminate period of a minimum of one day [to] a maximum of such person's natural life." G. L. c. 123A, § 14 (*d*). In other words, once adjudicated sexually dangerous, absent some intervention that triggers a judicial review of his status in which the Commonwealth must prove that he continues to be a sexually dangerous person, an incompetent individual may spend the rest of his natural life incarcerated in a secure facility. This contrasts with the procedure for individuals who are found incompetent to stand trial by reason of mental illness or defect and are committed, pursuant to G. L. c. 123, § 7, to a public or private facility for the care and treatment of mentally ill persons or to Bridgewater State Hospital[12] because there has been a determination that the "failure to hospitalize would create a likelihood of serious harm by reason of mental illness." Incompetent persons so committed are subject to an initial civil commitment for a term of six months, and may then be committed for subsequent periods of one year *only* on a required show-

---

[12] A male patient may be committed to Bridgewater State Hospital, pursuant to G. L. c. 123, § 7 (*b*), "when it is determined that the failure to hospitalize in strict security would create a likelihood of serious harm by reason of mental illness."

ing by the Commonwealth. See G. L. c. 123, §§ 7, 8 (committed individual has the right to a hearing on every petition for commitment and may be recommitted only on a showing that he is mentally ill and that his discharge would create a likelihood of serious harm). The requirement of periodic judicial review of the status of the person was one basis on which we concluded that the retention of an incompetent person in a treatment facility was constitutionally sound. See *Commonwealth* v. *DelVerde*, 398 Mass. 288, 301 (1986) ("Through G. L. c. 123, the Legislature has created a comprehensive set of procedural and substantive safeguards to ensure that criminal defendants incompetent to stand trial are neither criminally tried nor civilly committed *for longer than necessary*" [emphasis supplied]).

The Commonwealth forthrightly recognizes that due process protection for sexually dangerous persons who are found incompetent to stand trial requires some mechanism "to ensure that the respondents' rights and interests are adequately protected." It posits that it may be appropriate for a judge to appoint a guardian ad litem "when a question is raised concerning competency." That proposed solution, however, fails to address the mechanism by which "a question is raised" concerning the competency of the person once he has been adjudicated sexually dangerous and committed to a secure facility. There is a real risk that an incompetent person committed to the treatment center may be unable to avail himself of the opportunity to appear before a judge to require that the Commonwealth demonstrate that he remains sexually dangerous and in need of commitment. See G. L. c. 123A, § 9 (permitting any person committed to treatment center to petition for examination and discharge once every twelve months). The absence of any reliable means of obtaining such periodic reviews raises serious due process concerns. See *Hill, petitioner*, 422 Mass. 147, 154 (1996) (commitment pursuant to G. L. c. 123A does not constitute criminal punishment in part because G. L. c. 123A, § 9, "permits the SDP to petition for release every year . . . . Thus, unlike a criminal prisoner, the SDP is continuously evaluated to determine if treatment is necessary, and, if not, the petitioner will be released . . .").

Under the terms of G. L. c. 123A, a hearing to review the

status of the committed sexually dangerous person must be initiated by petition, which a sexually dangerous person can do with or without the assistance of a lawyer. See G. L. c. 123A, § 9 ("Unless the trier of fact finds that such person remains a sexually dangerous person, it shall order such person to be discharged from the treatment center"). But no person is required to initiate such petition. For individuals who have been found incompetent, relying on the individual himself, or his parents, spouse, issue, next of kin, or any friend to request a hearing (see G. L. c. 123A, § 9, listing persons who may petition on behalf of the committed person), does not afford constitutionally adequate protection. Those individuals named in the statute are not legally obligated to obtain review of the status of the incompetent person. Thus, an incompetent person might not himself be able to activate a review petition, and he may have no meaningful access to persons who are statutorily authorized to do so on his behalf. In this case, for example, there is no indication in the record that the defendant has a family member or friend required to assume the responsibility of filing petitions for his discharge. Even if such family member or friend were available, placing the burden of initiating periodic reviews of the defendant's status (which may extend for decades) solely on a third party may be constitutionally infirm.

Accordingly, to address the reservations described above, we interpret the statute as follows. In order to continue the commitment of an incompetent person, if the Commonwealth believes that such person continues to be sexually dangerous, it must seek appointment of a court-appointed attorney for the incompetent person before the expiration of the initial term of one year. Such attorney may then exercise the rights of the incompetent person in regard to a proceeding, see discussion *supra.* This procedure must at a minimum be followed at each successive occasion at which the petitioner has a right to apply for a hearing but remains incompetent.[13] We impose this requirement to provide what we consider to be essential to satisfy the

---

[13]General Laws c. 123A, § 9, provides that a petitioner "shall be entitled to file a petition for examination and discharge once in every twelve months." The Department of Correction may also file a petition "at any time if it believes a committed individual is no a longer sexually dangerous person." *Id.*

requirements of due process protection for incompetent persons who are involuntarily committed as SDPs pursuant to G. L. c. 123A.[14] See *Pielech* v. *Massasoit Greyhound, Inc.*, 423 Mass. 534, 538-539 (1996), cert. denied, 520 U.S. 1131 (1997), quoting *Adamowicz* v. *Ipswich*, 395 Mass. 757, 763-764 (1985) ("statutes are to be construed so as to avoid an unconstitutional result or the likelihood thereof").

8. *Conclusion.* For the foregoing reasons, we answer the reported questions as follows: Question one, "no"; question two, "yes"; question three, "attorney for the defendant"; question four, "yes"; question five, "no"; and question six, "no." The order denying the Commonwealth's petition for trial pursuant to G. L. c. 123A, § 14, is vacated and the matter is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[14]While the appointment of a permanent guardian ad litem for the incompetent person would permit the guardian to file an annual petition for discharge on behalf of that person, this, in our judgment, is a needlessly cumbersome mechanism. Placing the burden on the Commonwealth to seek appointment of counsel for an incompetent sexually dangerous person is sufficient to safeguard the liberty interests involved.