NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-1407

GUARDIANSHIP OF EZEKIEL.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This appeal arises from a consolidated proceeding involving both a care and protection petition and a guardianship petition pertaining to Ezekiel.  The mother is appealing from the decree and order of a Norfolk Juvenile Court judge granting the guardianship petition and appointing the maternal grandmother as the guardian of Ezekiel.[2]  On appeal, the mother claims that the Department of Children and Families (DCF) failed to prove her unfitness, and, in the alternative, that maternal grandmother is not a proper guardian for Ezekiel.  We affirm.

1.  Mother's unfitness.  The mother claims that DCF failed to prove by clear and convincing evidence that she was unfit at

_____

[1] A pseudonym.

[2] The father consented to the guardianship petition and has not appealed or participated in this appeal.

the date of trial, July 30, 2025.  The mother did not raise the issue of unfitness to the trial judge, yet claims on appeal that she did not waive this issue.[3]  We disagree.

An issue may not be raised for the first time on appeal. See Guardianship of Hocker, 439 Mass. 709, 719 (2003).  "The reason for this fundamental rule of appellate practice is well established:  it is important that an appellate court have before it an adequate record and findings concerning a claim to permit it to resolve that claim properly" (citation omitted). Boss v. Leverett, 484 Mass. 553, 563 (2020).  "Both the opposing party and the judge must be 'fairly put on notice as to the substance of the issue.'"  Adoption of Mattis, 106 Mass. App. Ct. 548, 549 (2026), quoting Chelsea Hous. Auth. v. McLaughlin, 482 Mass. 579, 584 (2019).  "[W]hether an issue has been raised is fact specific."  Boss, supra.

Here, the judge began the trial by stating that "the matter is scheduled for the [h]earing on the [m]erits on the [g]uardianship" petition.  The mother's counsel did not object

_____

    [3] The mother did not appeal either from findings, following the care and protection trial in February 2023, that the mother was unfit and Ezekiel was in need of care and protection, or the order, following the father's stipulation to his unfitness in June 2023, granting DCF permanent custody of Ezekiel.  See Care & Protection of Yetta, 84 Mass. App. Ct. 691, 695 (2014) ("To find a child in need of care and protection, there must be an affirmative showing of parental unfitness" [quotation and citation omitted]).

or raise to the judge that unfitness was an issue in dispute to be addressed at the hearing. When asked if she knew "what the meaning of this [h]earing is," the mother responded only that "[i]t's for [g]uardianship that I oppose." The judge also asked the mother's counsel if the mother was "looking to have custody returned to her," to which her counsel responded "[n]o."[4] After this representation by counsel, the judge asked Ezekiel's counsel to move on from a line of questioning that related to the mother's fitness. In fact, the mother's counsel even objected to another line of questioning that was relevant to the mother's fitness, by stating that "it's not germane to the question of [g]uardianship at this time." At the end of trial, when the mother's counsel made his closing argument, there was no argument on the issue of the mother's fitness, and when the judge made her findings and ruling allowing the guardianship on the record, there was no objection from the mother's counsel to the omission of findings about the mother's fitness. Finally, when the judge asked at the end of the hearing, "Is there anything else for today," the mother's counsel responded,

---

[4] The mother does not cite to any legal authority for the proposition that her decision to not seek physical custody of the child cannot be considered by the judge as an admission of unfitness. Cf. Care & Protection of Erin, 443 Mass. 567, 572-573 (2005) ("a parent's stipulation that he or she is unavailable to parent a child is a valid basis for a judgment because it is an admission of unfitness").

3

"Nothing, your honor."  The mother had countless opportunities to clarify that she was contesting her unfitness, but she availed herself of none.

While the judge's findings and conclusions of law are admittedly limited, this is almost certainly because the judge was not on notice that unfitness was a contested issue.  See M.H. Gordon & Son, Inc. v. Alcoholic Beverages Control Comm'n, 386 Mass. 64, 67 (1982) (trial judge's view of whether issue was raised is relevant, but alone is not dispositive).  Upon review, it is evident that the mother did not properly raise this issue to the trial judge, and we consider it waived.[5]

---

[5] The mother appears to focus her argument on the fact that the judge wrote the following in her conclusions of law:  "[t]he family's history with [DCF], the lack of [the m]other's involvement in [Ezekiel's] services and the status of [Ezekiel's] relationship with [the m]other indicates to the Court that [the m]other is unfit to have custody . . . .  The Court finds the petitioner has established sufficient evidence of [the m]other's unfitness to satisfy the necessary burden." In essence, the mother argues that because of this language, the judge did not find that the mother waived the issue of her fitness.  We are not persuaded that this language, when viewed in the light of the testimony at trial and in light of the fact that a guardianship analysis generally necessitates a preliminary finding of parental unfitness, see Guardianship of Estelle, 70 Mass. App. Ct. 575, 578 (2007), suggests that the judge was on notice of the mother contesting unfitness. Additionally, considering that the Supreme Judicial Court has previously stated that even where a parent stipulates to unfitness, "the factual basis for the initial determination of unfitness ideally should appear somewhere in the record," Care & Protection of Erin, 443 Mass. at 573, the judge quite likely felt it necessary to explain the factual basis underlying the mother's unfitness, even where the mother did not contest the issue.

4

2.  Guardianship appointment.  In the alternative, the mother claims that the maternal grandmother is not a proper guardian, and that her appointment was not in Ezekiel's best interest.  Again, we disagree.

On appellate review, "our task is not to decide whether we, presented with the same facts, would have made the same decision, but to determine whether the trial judge abused [her] discretion or committed a clear error of law."  Adoption of Hugo, 428 Mass. 219, 225 (1998), cert. denied sub nom. Hugo P. v. George P., 526 U.S. 1034 (1999).  "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made a clear error of judgment in weighing the factors relevant to the decision" (quotation and citation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

The governing principle in guardianship is that "[c]ustody of a child belongs to a parent unless that parent is unfit."  Guardianship of Estelle, 70 Mass. App. Ct. 575, 578 (2007).  A guardian may be appointed for a minor if, among other reasons, "the parents consent," or "the court finds the parents, jointly, or the surviving parent, to be unavailable or unfit to have custody."  G. L. c. 190B, § 5-204 (a).  Here, the father previously stipulated to his unfitness and consented to the maternal grandmother having guardianship of Ezekiel, and as addressed above, the mother waived the issue of unfitness.

5

"Upon hearing, if the court finds that a qualified person seeks appointment, venue is proper, the required notices have been given, the conditions of [§] 5-204 (a) have been met, and the welfare and best interest of the minor will be served by the requested appointment, it shall make the appointment . . . ." G. L. c. 190B, § 5-206 (c). See G. L. c. 190B, § 5-207 (a) ("The court may appoint as guardian any person whose appointment would be in the best interest of the minor"). What is in the best interest of the child is left to the sound discretion of the trial judge. See Adoption of Hugo, 428 Mass. at 225.

As a preliminary matter, to the extent that the mother's arguments reflect dissatisfaction with the judge's credibility determinations and the weight afforded to certain testimony, we discern no error. See Adoption of Frederick, 405 Mass. 1, 10 (1989) ("trial judge was in the best position to assess the credibility of the witnesses' testimony and determine the weight afforded it"). With regard to the maternal grandmother's care of Ezekiel, except for a four-month period spent at the Wayside group home and a ninety-day period spent detained at the Department of Youth Services, Ezekiel has remained with the maternal grandmother since March of 2022. The maternal grandmother has been a stable and consistent person in Ezekiel's life. Ezekiel also testified that he wants his grandmother to have custody of him. See Care & Protection of Georgette, 439

6

Mass. 28, 36 (2003) (children's "positions, based on mature expression, are entitled to weight in custody proceedings"). He testified that he felt safe in his grandmother's custody and care, and he answered affirmatively when asked if he feels comfortable with the grandmother and supported by her. The maternal grandmother works with Ezekiel's school on his individualized education program and improving his attendance, works to make sure he receives proper medical care, including helping him with treatment after he contracted a sexually transmitted disease, continues to help him engage with behavioral interventions, and ensures that Ezekiel attends all doctor, dentist, and optometrist appointments. The maternal grandmother also testified to actively engaging with DCF since Ezekiel was placed with her, and she has also supported Ezekiel in maintaining a relationship with his parents and extended family members.

While undoubtedly Ezekiel has struggled obeying the law and has displayed delinquent behavior, the judge was within her discretion to conclude that Ezekiel's "conduct is not the result of improper caretaking by [m]aternal [g]randmother[,] but rather a young adult who is making his own poor decisions regardless of the support and structure offered in [the m]aternal [g]randmother's home." Importantly, the mother did not suggest an alternative guardian; when the judge asked "who would your

7

client have [Ezekiel] be in the care of," the mother's counsel stated that the mother is "not in a position to nominate anybody."  Under these circumstances, we discern no abuse of discretion or error of law with the judge's determination that Ezekiel's best interest was served by granting the maternal grandmother's petition for guardianship.[6]

<u>Decree allowing guardianship petition and order of appointment affirmed</u>.

By the Court (Meade, Sacks & Wood, JJ.[7]),

Paul Little

Clerk

Entered:  June 26, 2026.

---

[6] To the extent that the mother challenges several factual findings as clearly erroneous, we discern no error.  See <u>Adoption of Frederick</u>, 405 Mass. at 10-11.

[7] The panelists are listed in order of seniority.