## Commonwealth *vs.* Larry Burgess.

Franklin. December 5, 2007. - January 8, 2008.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Sex Offender. Practice, Civil,* Sex offender. *Constitutional Law,* Sex offender, Equal protection of laws. *Due Process of Law,* Sex offender, Competency to stand trial. *Incompetent Person,* Commitment.

Evidence at civil commitment proceedings brought by the Commonwealth pursuant to G. L. c. 123A, § 15, against the defendant, who was criminally charged with a sexual offense but was not tried for or convicted of that offense because he was found incompetent to stand trial, was of sufficient strength to permit the judge to conclude that the defendant had committed the acts of which he stood accused. [368-372]

In a procedural due process challenge to G. L. c. 123A, § 15, concerning the civil commitment of persons charged with sexual offenses but found incompetent to stand trial, this court concluded that the procedures the Legislature established to determine whether the defendant committed the crimes charged adequately safeguarded against the erroneous potential deprivation of the defendant's liberty. [372-376]

This court upheld on equal protection grounds the validity of G. L. c. 123A, § 15, concerning the civil commitment of persons charged with sexual offenses but found incompetent to stand trial, where the difference in treatment of persons charged with a sexual offense but found incompetent to stand trial is necessary to further the compelling State interest in protecting the public from sexually dangerous persons. [376-377]

Petition filed in the Superior Court Department on July 19, 2000.

The case was heard by *Bertha D. Josephson*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*David Hirsch*, Committee for Public Counsel Services, for the defendant.

*Steven Greenbaum*, Assistant District Attorney, for the Commonwealth.

Greaney, J. In *Commonwealth* v. *Nieves*, 446 Mass. 583, 590-591 (2006), we considered the constitutionality of G. L.

c. 123A, § 14, that provision of our sexually dangerous person statute that authorizes the maintenance of civil commitment proceedings against an incompetent individual who has been convicted of a sexual offense. We held in the *Nieves* decision that "[d]ue process is not offended by subjecting [an incompetent] defendant, with the assistance of counsel, to trial of the Commonwealth's [G. L. c. 123A] petition as provided in § 14." *Id.* at 591. We granted the defendant's application for direct appellate review to consider a similar constitutional challenge to G. L. c. 123A, § 15, which provides for adjudication whether the subject of the Commonwealth's petition, who has been criminally charged with a sexual offense but has not been tried or convicted of that offense because he has been deemed incompetent to stand trial, did commit the act or acts of which he stands accused.[1] The defendant claims that the adversary procedure set forth in § 15 violates Federal and State constitutional principles of due process and equal protection. For reasons that will be explained later in this opinion, we conclude that the

---

[1]Section 15 of G. L. c. 123A, inserted by St. 1999, c. 74, § 8, provides:

"If a person who has been charged with a sexual offense has been found incompetent to stand trial and his commitment is sought and probable cause has been determined to exist pursuant to section 12, the court, without a jury, shall hear evidence and determine whether the person did commit the act or acts charged. The hearing on the issue of whether the person did commit the act or acts charged shall comply with all procedures specified in section 14, except with respect to trial by jury. The rules of evidence applicable in criminal cases shall apply and all rights available to criminal defendants at criminal trials, other than the right not to be tried while incompetent, shall apply. After hearing evidence the court shall make specific findings relative to whether the person did commit the act or acts charged; the extent to which the cause of the person's incompetence to stand trial affected the outcome of the hearing, including its effect on the person's ability to consult with and assist counsel and to testify on his own behalf; the extent to which the evidence could be reconstructed without the assistance of the person; and the strength of the prosecution's case. If the court finds, beyond a reasonable doubt, that the person did commit the act or acts charged, the court shall enter a final order, subject to appeal by the person named in the petition and the court may proceed to consider whether the person is a sexually dangerous person according to the procedures set forth in sections 13 and 14. Any determination made under this section shall not be admissible in any subsequent criminal proceeding."

challenged aspects of § 15 are constitutionally sound. We also reject the defendant's contention that the findings of the judge in the Superior Court who presided over his § 15 hearing were inconsistent and, therefore, did not support the judge's order committing the defendant to the treatment center at the Massachusetts Correctional Institution at Bridgewater (treatment center), for further proceedings to determine whether he is a sexually dangerous person. We now affirm that order.

1. The procedure statutorily mandated for a G. L. c. 123A commitment is set forth in *Commonwealth* v. *Nieves, supra* at 585-587, and cases cited therein, and we see no need to repeat that information here. The relevant procedural background of this appeal is as follows. In 1993, the defendant was indicted in the Superior Court on two counts of rape of a child by force and five counts of indecent assault and battery on a child under fourteen. The charges against the defendant were based on allegations that he had, repeatedly between the years of 1989 and 1992, sexually molested the three young sons of his then live-in girl friend. Competency hearings held in 1994 and 1998 resulted in determinations that the defendant was incompetent to stand trial.

In 2000, the Commonwealth commenced this action by filing a petition for the defendant's civil commitment under G. L. c. 123A as a sexually dangerous person. A judge in the Superior Court ordered the defendant temporarily committed to the treatment center, pending decision on the Commonwealth's petition. The defendant has been the subject of numerous evaluations since that time (most recently in 2003), and, on each occasion, the defendant has been found to be incompetent to stand trial. In January, 2004, a different judge in the Superior Court held a hearing pursuant to G. L. c. 123A, § 12, and determined that probable cause exists to believe that the defendant is a sexually dangerous person. Because of the defendant's incompetency, the judge ordered that a hearing be conducted, pursuant to § 15, to determine whether the defendant had committed the offenses with which he is charged.

2. That hearing is the focus of this appeal. It was held in the spring of 2004, eleven years after the defendant was indicted, and four years after his initial commitment to the treatment

center under the Commonwealth's petition. The Commonwealth's case rested primarily on the testimony of two alleged victims, which, in turn, was corroborated by testimony of their mother. The first alleged victim, D.C. (now an adult), testified that, beginning when he was approximately nine years old, the defendant sexually molested him, in D.C.'s bed at night, by touching D.C.'s genital region with his hand or his penis, and, sometimes, forcing D.C. to touch his (the defendant's) penis. D.C. testified that similar occurrences happened, several times weekly, over the course of two years while the defendant lived with his mother. One of the incidents of molestation involved penetration. D.C. testified that he remained silent out of fear of the defendant, who physically abused him and his younger brothers, and who told D.C. not to tell anyone what he was doing.

A second alleged victim, B.C. (also now an adult), testified to an occurrence that took place when he was approximately seven years old. While B.C. was taking a shower, the defendant, who was naked, entered the shower enclosure, and stood behind him for five to ten minutes fondling his penis, under the guise of "cleaning" it. Like his older brother, B.C. did not reveal the sexual abuse because he feared the defendant's physical abuse. The victims' mother also testified, as a fresh complaint witness, as to what her sons had disclosed to her in 1992. The defendant presented no witnesses and did not testify on his own behalf.

As directed by § 15, the judge made specific findings regarding the defendant's commission of the acts charged, the effect of the defendant's incompetence on the outcome of the hearing, and the strength of the Commonwealth's case. Her findings with respect to the commission of the acts charged reflect the testimony summarized above (but provide far greater detail), and are not specifically challenged by the defendant. The defendant does challenge the judge's findings with respect to his incompetency and the strength of the Commonwealth's case. He argues that the commitment order cannot stand because it is based on inconsistent findings that render the judge's ultimate conclusion (that he committed four of the charged acts) "wholly contradictory and devoid of meaning" and, essentially, preclude a finding "beyond a reasonable doubt." We now summarize those findings.

The judge considered the extent to which the cause of the defendant's incompetence to stand trial affected the outcome of the hearing. Based on numerous reports of psychological evaluations of the defendant, as well as descriptions of the defendant at earlier court proceedings, the judge found that the defendant suffers from serious cognitive defects and mild mental retardation, as well as a personality style that tends to extreme anxiety, tearfulness, and an inability to focus on the topic at hand when exposed to pressure. The judge found the defendant's incompetency to be due to his serious cognitive deficits and mild mental retardation that, when combined with his personality style, prevent him from assisting his attorney to any more than a minimal degree. Based on a psychologist's report received on the day of the hearing, the judge found that the defendant was capable of testifying on his behalf, but that, because of his personality style, any such testimony likely would not work in the defendant's favor. Based on her own observations of the defendant during the hearing, and on defense counsel's representations, the judge found that defense counsel was presented with minimal assistance from the defendant. The judge found that the Commonwealth's case was strong, and although it would have been stronger had there been physical evidence, the fact that the defendant was unable to provide his counsel with assistance did not affect the outcome of the hearing. Although the judge recognized that the defendant's incompetency "had some effect," she also found that the defendant's incompetence was not a "determining factor" in the outcome of the hearing. The judge concluded, beyond a reasonable doubt, that the defendant committed four of the acts charged.[2] As mandated by § 15, the judge then ordered that the defendant be held at the treatment center, pending further proceedings, pursuant to §§ 13 and 14, to determine whether he is a sexually dangerous person as defined in § 1 of G. L. c. 123A.

There is no error. The defendant incorrectly presumes that the severity of his limitations, and the judge's recognition that his

---

[2]After the presentation of the Commonwealth's evidence, the judge allowed the defendant's motion to remove from consideration (the motion was styled as the equivalent of a motion for required findings of not guilty) three of the seven charges pending against him. Those charges involved a third alleged victim, who did not testify.

limitations may have "had some effect" on the outcome of the case, precludes a conclusion, beyond a reasonable doubt, that the defendant committed the charged offenses. This is not accurate. To the contrary, the language of § 15 expresses an intent, on the part of the Legislature, that G. L. c. 123A commitment proceedings go forward against an incompetent person, even one who may have limited comprehension of the proceedings. See *Commonwealth* v. *Nieves*, 446 Mass. 583, 589-590 (2006). "Where the statute is clear, we interpret it as written." *Id.* at 590, citing *West's Case*, 313 Mass. 146, 149 (1943).[3]

The judge found the Commonwealth's witnesses to be "especially credible and their testimony compelling." This determination was reached despite the existence of some contradictory testimony presented at the hearing and despite defense counsel's vigorous attempts to demonstrate a motive to lie on the part of the witnesses. As in connection with any evidentiary hearing, we defer to the credibility determinations of the judge, who had the opportunity to observe and evaluate the witnesses as they testified. That the judge's credibility evaluations did not favor the defendant does not make them suspect or otherwise undercut the judge's ultimate conclusion. See *Commonwealth* v. *Gonsalves*, 429 Mass. 658, 668-669 (1999) ("Where, as here, the evidence consists solely of oral testimony, the determination of the weight and credibility of the testimony is the responsibility of the judge"); *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990). See also *Commonwealth* v. *Ortiz*, 435 Mass. 569, 577-578 (2002). The Commonwealth's evidence was of sufficient strength to permit the judge to conclude, for purposes of the Commonwealth's G. L. c. 123A petition, that the defendant had committed the acts that were tried.[4] The familiar "beyond a reasonable doubt" standard has

---

[3]The defendant raises in this appeal a separate claim that the statutory language of G. L. c. 123A, § 15, is impermissibly vague. This claim is a facial challenge to the statute's constitutionality that should have been raised before the § 15 hearing took place. See *Commonwealth* v. *Moses*, 436 Mass. 598, 605 n.4 (2002); *Langlitz* v. *Board of Registration of Chiropractors*, 396 Mass. 374, 382 (1985). As our discussion makes clear, we find no merit in this claim. The statutory language provides sufficient guidance to a judge charged with making findings and determining whether a defendant committed the act or acts charged.

[4]The defendant appears to overlook an obvious purpose behind § 15's

never included a requirement that the Commonwealth's case be overwhelming.[5]

3. We now turn to the constitutional question presented — whether an individual, who has been charged with a sexual offense but, due to incompetency, has not been tried and convicted of that charge, may nevertheless, consistent with principles of due process and equal protection, be subject to G. L. c. 123A commitment proceedings as a sexually dangerous person based on a judge's determination, after a hearing pursuant to § 15, that he committed the sexual offense, or offenses, charged.[6]

a. We begin our due process analysis by acknowledging that requirements for minimum due process may vary depending on the context. See *Commonwealth* v. *Nieves, supra* at 590; *Commonwealth* v. *Torres*, 441 Mass. 499, 502 (2004); *Spence* v. *Gormley*, 387 Mass. 258, 274 (1982). We also note that, in determining whether a statute affecting protected liberty interests constitutes a violation of procedural due process, we employ the test first enunciated in *Mathews* v. *Eldridge*, 424 U.S. 319, 335

requirement of detailed findings with respect to the extent of the defendant's incompetency, namely, to develop a complete record, grounded on the evidence, for use in a hearing pursuant to G. L. c. 123A, § 14, so that the issue whether a defendant, who is incompetent, is a sexually dangerous person may be properly evaluated. (We note here a point that is beyond question: "Any determination made under [§ 15] shall not be admissible in any subsequent criminal proceeding" against the defendant. G. L. c. 123A, § 15 [see note 1, *supra*]).

[5]The defendant is incorrect in asserting that there is no evidentiary support for the judge's finding that the defendant had been better able to assist counsel in prior criminal proceedings. Reports from competency evaluations conducted in 1993 indicate that the defendant understood the specific offenses with which he was charged and the nature, and possible outcomes, of the criminal proceedings against him, but that, due to deficient communication skills, might have difficulty working with an attorney. A report from a competency evaluation conducted in 1998 contained the opinion of a psychologist that the defendant continued to show "significant deficits" in his competency-related abilities and that he "seems to be even less able to discuss legal proceedings (and his legal problems in particular) at this point in time than he was four years ago. This finding may be partly the result of [the defendant's] current high level of anxiety over his court case. However, it is also possible that because of his learning and memory problems, things have faded with the passage of time."

[6]The defendant previously filed two motions to dismiss the Commonwealth's petition based on facial challenges to the constitutionality of G. L. c. 123A, substantially similar to those presented here. Those motions were denied.

(1976), which requires that "the individual interest at stake must be balanced against the nature of the governmental interest and the risk of an erroneous deprivation of liberty or property." *Aime* v. *Commonwealth,* 414 Mass. 667, 675 (1993), citing *Mathews* v. *Eldridge, supra.* See *Spence* v. *Gormley, supra* at 274-277. In considering these factors in connection with G. L. c. 123A, § 15, we are guided by what has already been said, in *Commonwealth* v. *Nieves, supra,* with respect to a proceeding under § 14.

"The defendant's interest is weighty. If committed, his loss of liberty would be total. G. L. c. 123A, § 6A. Commitment is for an indeterminate period, § 14, and he has a strong interest in avoiding such commitment. However, the defendant's interest must, with appropriate safeguards, yield to the Commonwealth's paramount interest in protecting its citizens. We see no reason why the public interest in committing sexually dangerous persons to the care of the treatment center must be thwarted by the fact that one who is sexually dangerous also happens to be incompetent." *Id.* at 590-591.

The defendant recognizes, as he must, that due process is not violated when the Commonwealth proceeds, in a § 14 hearing, against an incompetent defendant who already has been convicted of a sexual offense. In such a case, the underlying facts are not susceptible to dispute, and the matter to be proved is a defendant's current status rather than his prior misbehavior. The defendant contends, however, that a defendant who is not competent to assist counsel in his own defense may not, within the protections of due process, be subjected to a trial (or § 15 hearing) on the contested factual issue whether he committed a specific offense.[7] He refers to, among other decisions, *Cooper* v. *Oklahoma,* 517 U.S. 348 (1996), in which the Supreme Court of the United States noted:

"Competence to stand trial is rudimentary, for upon it

[7]The defendant brings his claim under both the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights, but makes no distinct argument under either, beyond asserting that his due process rights have been violated. Article 12 has always been considered as embodying due process protections at least parallel to those granted by the Fourteenth Amendment. See *Commonwealth* v. *Alvarez,* 413 Mass. 224, 228 n.4 (1992), citing *Commonwealth* v. *Jackson,* 369 Mass. 904, 916 (1976).

depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so."

*Id.* at 354, quoting *Riggins* v. *Nevada,* 504 U.S. 127, 139-140 (1992) (Kennedy, J., concurring in judgment). See *Drope* v. *Missouri,* 420 U.S. 162, 171-172 (1975); *Commonwealth* v. *Hill,* 375 Mass. 50, 51 (1978); *Commonwealth* v. *Vailes,* 360 Mass. 522, 524 (1971).

The short response to this argument is that a G. L. c. 123A proceeding is neither criminal nor penal in nature, but is a civil proceeding to which constitutional rights afforded criminal defendants do not necessarily apply. See *Commonwealth* v. *Bruno,* 432 Mass. 489, 500-501 (2000). Further, although the difference between criminal and civil proceedings may not be determinative in all contexts, see *Hinnant, petitioner,* 424 Mass. 900, 909 (1997) ("no more prepared to conclude that the State can impair the liberty interests of a person wanted on extradition who does not understand what is occurring, does not understand the charges against him and cannot communicate with counsel than we would be were this a criminal proceeding"), the State may indeed impair the liberty interests of a defendant who is a sexually dangerous person, even when that person may not understand what is occurring and cannot communicate with counsel. See *Commonwealth* v. *Nieves, supra.* See also *Commonwealth* v. *Hatch,* 438 Mass. 618, 619-624 (2003).

That being said, we agree with the defendant that the major purpose of a § 15 hearing is to determine whether a defendant has committed a specific criminal act or acts. Further, even though the hearing is civil in nature, see *Commonwealth* v. *Gillis,* 448 Mass. 354, 357 (2007), the Legislature has provided that it proceed much the same as a criminal trial, and that it include many rights to which a criminal defendant is constitutionally entitled. The Legislature also chose to import to a § 15 hearing the familiar "beyond a reasonable doubt" standard.

We are satisfied that, in establishing the procedure set forth

in G. L. c. 123A, § 15, to determine whether an incompetent defendant has committed a sexual offense, or offenses, and therefore allow the Commonwealth's petition to proceed, the Legislature provided adequate procedures to guard against the erroneous potential deprivation of the defendant's liberty. In reaching this conclusion, we have taken into account the following statutory rights, which protect an incompetent defendant's ability to defend himself against the allegations of crime and, thus, minimize the likelihood of a mistake. These rights include:

(i) the assistance of counsel;

(ii) the retention of experts;

(iii) the opportunity to use process to compel the attendance of witnesses;

(iv) cross-examination of adverse witnesses;

(v) the right to present evidence in his defense;

(vi) the right to appeal from the final determination;

(vii) the right to have the hearing conducted according to the rules of evidence applicable in criminal cases;

(viii) the right to a determination of the commission of the criminal acts made beyond a reasonable doubt.[8]

We reject the defendant's assertion that these protections are simply unworkable when a defendant is incompetent. In cases of extreme incompetence, the rights granted by G. L. c. 123A may generally be exercised by counsel. In this way, a person who is unable to assist his or her lawyer in a meaningful way

---

[8]We point out that if such a determination is made, an incompetent defendant has the statutory right to a jury trial, pursuant to G. L. c. 123A, § 14, with its own set of statutory protections, before being committed as a sexually dangerous person. See *Commonwealth* v. *Nieves*, 446 Mass. 583, 590-591 (2006). Further, in the *Nieves* case, we imposed a burden on the Commonwealth to seek appointment of a court-appointed attorney for an incompetent defendant who has been so committed, before the expiration of the initial year of commitment, to exercise that person's periodic right to a hearing to review his status. See *id.* at 597-598.

will have the benefit of these rights. We reached the same conclusion in *Commonwealth* v. *Nieves, supra* at 592, citing *Guardianship of Hocker*, 439 Mass. 709, 718 & n.18 (2003); and *Commonwealth* v. *Hatch, supra* at 626. See Mass. R. Prof. C. 1.14 comment [2], 426 Mass. 1361 (1998) (when client suffers from disability and "has no guardian or legal representative, the lawyer often must act as de facto guardian").[9]

b. We now review the validity of G. L. c. 123A, § 15, on equal protection grounds.[10] The defendant asserts that § 15 implicates equal protection because the statute "denies incompetent defendants prosecuted under G. L. c. 123A the rights guaranteed to all other alleged sexually dangerous persons and all other incompetent criminal defendants." Because the statute affects a fundamental liberty interest, and applies only to incompetent defendants who have been charged with a sexual offense, its constitutionality is dependent on a showing that the difference in treatment is necessary to further a compelling State interest. See *Blixt* v. *Blixt*, 437 Mass. 649, 680 (2002) (Sosman, J., dissenting), cert. denied, 537 U.S. 1189 (2003); *Commonwealth* v. *Freiberg*, 405 Mass. 282, 291, cert. denied, 493 U.S. 940 (1989).[11] As has been stated, it is beyond question that the Legislature has a compelling interest in protecting the public from sexually dangerous persons. That interest is not diminished when that person happens to be incompetent to stand trial. The defendant appears to perceive a § 15 hearing as an unfair burden. The additional safeguards imposed by a § 15

---

[9]We reject the defendant's argument that the pool of defendants potentially subject to G. L. c. 123A, § 15, is insufficiently circumscribed to satisfy the requirements of substantive due process under principles stated in *Commonwealth* v. *McLeod*, 437 Mass. 286, 292-293 (2002). Commitment procedures apply only to incompetent persons who are currently confined or committed and subject to the jurisdiction of the district attorney. See G. L. c. 123A, §§ 1, 12. Criminal charges against an incompetent person must be dismissed at the expiration of the time period equal to one-half the maximum potential sentence for the most serious crime charged. See G. L. c. 123, § 16 (*f*). Therefore, there is a time limit during which G. L. c. 123A petitions may be brought against a person who has been deemed incompetent to stand trial for a sexual offense.

[10]As with due process, the standard of review is the same under the provisions of our State Constitution and the Fourteenth Amendment. See *Commonwealth* v. *Arment*, 412 Mass. 55, 62-63 (1992).

[11]The defendant does not argue that he is a member of a suspect class.

hearing, however, as has been discussed, provide necessary due process protections to an incompetent defendant who is the subject of a G. L. c. 123A petition. The statute does not provide such a hearing for convicted incompetent defendants because it has already been adjudicated, beyond a reasonable doubt, that they had committed the acts with which they were charged.

Differences in treatment between persons confined pursuant to G. L. c. 123A and G. L. c. 123 are constitutionally permissible. The Commonwealth need only provide substantially similar, and not identical, procedural safeguards. See *Andrews, petitioner*, 368 Mass. 468, 480 (1975). We reject the defendant's suggestion that, were he civilly committed under G. L. c. 123, the maximum time he could be confined would be "equal to the time of imprisonment which [he] would have had to serve prior to becoming eligible for parole if he had been convicted of the most serious crime with which he was charged in court and sentenced to the maximum sentence he could have received, if so convicted." G. L. c. 123, § 16 (*f*). Section 16 (*f*) sets a time limit on the pendency of criminal charges by providing for their dismissal after an ascertainable period of time and applies to incompetent defendants whether or not they have been committed. See *Foss* v. *Commonwealth*, 437 Mass. 584, 587 n.2, 589 (2002). If committed under G. L. c. 123, an incompetent person's release from confinement is governed by G. L. c. 123, §§ 7, 8, and 16 (*c*), and the potential exists for a commitment for life, if the commitment criteria are satisfied each year. See G. L. c. 123, § 8 (*d*), (*e*). This case does not present the situation, as was presented to the United States Supreme Court in *Jackson* v. *Indiana*, 406 U.S. 715 (1972), where the challenged statute provided for commitment on a showing of incompetence to stand trial and provided for release only on proof of competence. See *id.* at 720-721. We reject the defendant's equal protection claim.[12]

4. The order entered in the Superior Court, committing the

---

[12]We also reject the defendant's claim, raised for the first time on appeal, that the hearing conducted pursuant to G. L. c. 123A, § 15, is unlawful under 42 U.S.C. § 12132 (2000), the Americans with Disabilities Act (ADA), which prohibits wrongful discrimination against individuals with disabilities. The ADA has no applicability in this matter.

defendant to the treatment center to determine whether he is a sexually dangerous person, is affirmed. The case is remanded to the Superior Court for further proceedings.

*So ordered.*