NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12293

COMMONWEALTH  vs.  EDWARD CURRAN.


Worcester.      September 6, 2017. - January 12, 2018.

Present:  Gants, C.J., Lenk, Gaziano, Budd, Cypher, &
Kafker, JJ.



Sex Offender.  Practice, Civil, Sex offender.  Evidence, Sex
    offender, Expert opinion, Competency, Insanity.
    Incompetent Person, Commitment.  Witness, Expert.



Civil action commenced in the Superior Court Department on
December 3, 2015.

A pretrial motion to admit expert testimony with regard to
criminal responsibility was heard by Richard T. Tucker, J.

An application for leave to prosecute an interlocutory
appeal was allowed by Judd J. Carhart, J., in the Appeals Court.
The Supreme Judicial Court on its own initiative transferred the
case from the Appeals Court.


Marcia T. Kovner for the defendant.
Ellyn H. Lazar-Moore, Assistant District Attorney, for the
Commonwealth.


GAZIANO, J.  General Laws c. 123A, § 15, allows incompetent

persons who are unable to stand trial for qualifying sex

offenses to be deemed sexually dangerous based on the commission of those offenses. In 2008, we held that this proceeding did not violate due process or equal protection because of the rights the Legislature explicitly included in the statute to "protect an incompetent defendant's ability to defend himself against the allegations of crime and, thus, minimize the likelihood of a mistake." Commonwealth v. Burgess, 450 Mass. 366, 375 (2008). Those protections encompass "all rights available to criminal defendants at criminal trials, other than the right not to be tried while incompetent," G. L. c. 123A, § 15, including the retention of experts, the right to present evidence in defense of the charges, and "the right to a determination of the commission of the criminal acts made beyond a reasonable doubt." Burgess, supra.

Here, the defendant sought to introduce at a hearing on the Commonwealth's G. L. c. 123A, § 15, petition expert testimony that he was not criminally responsible. Interpreting the statutory language "whether the person did commit the act or acts charged" to mean that he should determine only whether the acts were committed, not whether the defendant was guilty of the acts, the judge denied the motion and allowed the Commonwealth's motion to preclude the testimony. We conclude that the right of an incompetent defendant to raise defenses in a proceeding pursuant to G. L. c. 123A, § 15, includes that of a lack of

criminal responsibility. Therefore, the denial of the motion to admit expert testimony, and the allowance of the Commonwealth's motion to preclude that testimony, must be reversed.

1. Facts. The following facts are uncontested for the purposes of this interlocutory appeal. While in a residential treatment program for mental illness, the defendant approached a female nurse who was attempting to administer medication; said, "Look what I have for you"; and grabbed his genitals over his clothing. He then used his body to push her against the counter, placed his leg between her legs, and reached his hand under her shirt and touched her breasts. The nurse called for help, and the defendant backed away as other staff members came to assist her.

The defendant was charged with indecent assault and battery on a person age fourteen or older, G. L. c. 265, § 13H, a qualifying sex offense under G. L. c. 123A, § 1. He was found incompetent to stand trial; pursuant to G. L. c. 123, §§ 15 and 16 (f), the charge was dismissed and the defendant was committed to Bridgewater State Hospital. The Commonwealth then filed a petition under G. L. c. 123A, § 12, to have the defendant committed as a sexually dangerous person. A Superior Court judge ordered another competency hearing and found that the defendant still was not competent, so the process moved forward under G. L. c. 123A, § 15.

A second Superior Court judge concluded that there was probable cause to believe that the defendant was a sexually dangerous person. At a hearing pursuant to G. L. c. 123A, § 15, before that judge, the defendant sought to present expert evidence regarding criminal responsibility; the Commonwealth filed a motion to preclude such evidence. The judge ruled that expert testimony concerning a lack of criminal responsibility is not admissible in a hearing on a petition pursuant to G. L. c. 123A, § 15, because it is not relevant to a factual determination whether the acts indeed had been committed. The defendant filed an application for an interlocutory appeal in the Appeals Court. A single justice of the Appeals Court allowed the application, and we transferred the case to this court on our own motion.

2. Discussion. When a person is convicted of a qualifying sex offense or adjudicated delinquent or a youthful offender by reason of a qualifying sex offense, the district attorney or Attorney General may file a petition alleging that the person is sexually dangerous. See G. L. c. 123A, § 12. If a person is charged with a qualifying sex offense but found incompetent to stand trial, however, that person also may be subject to classification as sexually dangerous, notwithstanding the absence of a conviction. See G. L. c. 123A, §§ 12, 15.

In the latter case, a judge in the court where the petition is filed first determines whether there is probable cause to believe that the incompetent person is sexually dangerous. See G. L. c. 123A, § 12. Following that finding and temporary civil commitment of the defendant, a judge conducts a hearing pursuant to G. L. c. 123A, § 15,[1] at which the judge hears evidence and determines "whether the person did commit the act or acts

_____

[1] General Laws c. 123A, § 15, provides, in its entirety:

> "If a person who has been charged with a sex offense has been found incompetent to stand trial and his commitment is sought and probable cause has been determined to exist pursuant to [G. L. c. 123A, § 12], the court, without a jury, shall hear evidence and determine whether the person did commit the act or acts charged. The hearing on the issue of whether the person did commit the act or acts charged shall comply with all procedures specified in [G. L. c. 123A, § 14], except with respect to trial by jury. The rules of evidence applicable in criminal cases shall apply and all rights available to criminal defendants at criminal trials, other than the right not to be tried while incompetent, shall apply. After hearing evidence the court shall make specific findings relative to whether the person did commit the act or acts charged; the extent to which the cause of the person's incompetence to stand trial affected the outcome of the hearing, including its effect on the person's ability to consult with and assist counsel and to testify on his own behalf; the extent to which the evidence could be reconstructed without the assistance of the person; and the strength of the prosecution's case. If the court finds, beyond a reasonable doubt, that the person did commit the act or acts charged, the court shall enter a final order, subject to appeal by the person named in the petition and the court may proceed to consider whether the person is a sexually dangerous person according to the procedures set forth in [G. L. c. 123A, §§ 13-14]. Any determination made under this section shall not be admissible in any subsequent criminal proceeding."

charged."  The statute explicitly provides that, with the exception of trial by jury, the procedures set forth in G. L. c. 123A, § 14, apply to this judicial determination, that all rules of evidence are applicable, and that "all rights available to criminal defendants at criminal trials, other than the right not to be tried while incompetent, shall apply."  See G. L. c. 123A, § 15.  If an individual is found to have committed the act or acts charged, the judge may proceed to consider under G. L. c. 123A, §§ 13 and 14, whether the individual is a sexually dangerous person.

In Burgess, 450 Mass. at 375, we concluded that the provisions of G. L. c. 123A, § 15, do not violate due process because the Legislature explicitly provided to incompetent defendants statutory rights sufficient "to guard against the erroneous potential deprivation of the defendant's liberty" and to "protect an incompetent defendant's ability to defend himself against the allegations of crime and, thus, minimize the likelihood of a mistake."  These rights include, inter alia, the retention of experts, the right to present evidence in defense of the charges, and "the right to a determination of the commission of the criminal acts made beyond a reasonable doubt."  Burgess, supra.  See G. L. c. 123A, § 15.

The Commonwealth argues, in effect, that the statute's instructions to "determine whether the person did commit the act

or acts charged" refer solely to the conduct and not to the person's intent or criminal responsibility.[2]  At argument before us, the Commonwealth emphasized that the Legislature chose the word "act," rather than "offense" or "crime."

"Our primary duty in interpreting a statute is 'to effectuate the intent of the Legislature in enacting it.'" Sheehan v. Weaver, 467 Mass. 734, 737 (2014), quoting Water Dep't of Fairhaven v. Department of Envtl. Protection, 455 Mass. 740, 744 (2010).  "Ordinarily, where the language of a statute is plain and unambiguous, it is conclusive as to legislative intent."  Thurdin v. SEI Boston, LLC, 452 Mass. 436, 444 (2008). That said, "[w]e will not adopt a literal construction of a statute if the consequences of such construction are absurd or unreasonable."  Attorney Gen. v. School Comm. of Essex, 387

---

[2] The parties additionally addressed the question whether, and for how long, the Commonwealth may civilly commit an incompetent defendant who has been found to lack criminal responsibility following a hearing pursuant to G. L. c. 123A, § 15.  According to the defendant, such an individual would be subject to civil commitment "under the mental health statute[s]."  See G. L. c. 123, §§ 7, 8, 16.  Civil commitment under those statutes, the defendant maintains, would "address both the defendant's mental illness and also the public safety." The Commonwealth urges the court not to reach the question, because the issue is not ripe.  Where the case is before us on an appeal from orders on motions in limine, and the judge has yet to make a determination whether the defendant lacks criminal responsibility, we agree that the matter is not yet ripe.  We strongly urge the Legislature to address the question of the appropriate course where a defendant has been found in a proceeding under G. L. c. 123A, § 15, to lack criminal responsibility.

Mass. 326, 336 (1982). See Black's Law Dictionary 11-12 (10th ed. 2014) (defining "absurdity" as "being grossly unreasonable" and "[a]n interpretation that would lead to an unconscionable result, esp. one that . . . the drafters could not have intended"). "Where the words of the statute are ambiguous, we strive to make it an effectual piece of legislation in harmony with common sense and sound reason and consistent with legislative intent" (quotation and citation omitted). Commonwealth v. Pon, 469 Mass. 296, 302 (2014).

In Burgess, 450 Mass. at 374, we observed that "the Legislature has provided that [a hearing pursuant to G. L. c. 123A, § 15, shall] proceed much the same as a criminal trial, and that it include many rights to which a criminal defendant is constitutionally entitled. The Legislature also chose to import to a [G. L. c. 123A, § 15,] hearing the familiar 'beyond a reasonable doubt' standard." The Legislature's intent, therefore, was to substitute this hearing for the criminal trial that an incompetent person did not have before proceeding to a determination whether the person is sexually dangerous. Our holding in Burgess that the statute does not violate due process relied on the provision of "adequate procedures to guard against the erroneous potential deprivation of the defendant's liberty"; refusing to allow defendants to claim lack of criminal

responsibility threatens the constitutionality of the statute by removing an important protection.  Id. at 375.

The Legislature did not, as the Commonwealth argues, restrict the ability of an incompetent defendant to raise all available defenses.  Rather, the Legislature intended, as it broadly stated, to provide "all rights available to criminal defendants at criminal trials, other than the right not to be tried while incompetent."  See G. L. c. 123A, § 15.  Importantly, these rights include the right to raise defenses, such as intoxication, consent, diminished capacity, accident, and lack of criminal responsibility.  We are not persuaded, as the Commonwealth suggests, that a lack of criminal responsibility is different from other defenses that could be raised at a hearing under G. L. c. 123A, § 15.[3]

---

[3] The concurrence is correct that a G. L. c. 123A, § 15, hearing is civil, not criminal, in nature, and that we said in Commonwealth v. Burgess, 450 Mass. 366, 374 (2008), that "constitutional rights afforded criminal defendants do not necessarily apply" at such hearings.  Immediately thereafter in the next paragraph, however, we clarified that "even though the hearing is civil in nature, . . . the Legislature has provided that it proceed much the same as a criminal trial, and that it include many rights to which a criminal defendant is constitutionally entitled."  The statute is clear that those rights include all rights afforded a criminal defendant except the right not to be tried while incompetent and the right to a jury trial.  See G. L. c. 123A, § 15.  Among these rights are the assistance of counsel, the retention of experts, cross-examination of adverse witnesses, the right to present evidence in defense, the right to appeal from the final determination, the right to have the hearing conducted according to the rules

The Commonwealth also focuses on our conclusion in Commonwealth v. Nieves, 446 Mass. 583, 590 n.6 (2006), that a judge should "make the predicate factual determinations regarding the actions that would ordinarily constitute a crime." Those predicate factual determinations include proof of each of the elements of the charged sex offense. Here, the defendant was charged with indecent assault and battery on a person age fourteen or older; the elements of that offense include an intent to engage in the touching and a lack of justification or excuse. Commonwealth v. Marzilli, 457 Mass. 64, 67 (2010). In order to prove that the defendant committed the act or acts charged, it therefore would be necessary to demonstrate that the defendant possessed the requisite intent and did not have any

_____

of evidence applicable in criminal cases, and the right to a determination of the commission of the criminal acts beyond a reasonable doubt. See Burgess, supra at 374-375.

We have emphasized the critical rights at stake in a sexually dangerous person proceeding, and the necessity of due process protections where a defendant's liberty interest is at stake and he faces confinement for a period of up to life. See id. We also have emphasized that G. L. c. 123A, § 15, satisfies due process requirements specifically because it "protect[s] an incompetent defendant's ability to defend himself against the allegations of crime." Burgess, supra at 375. As noted, those protections include, among other things, all defenses. The due process protections recognized in Burgess, supra, would be significantly diminished if, as the concurrence maintains, evidence of a lack of criminal responsibility were admissible, if at all, within a judge's discretion, and then only to "provide the judge a better understanding of the respondent's actions and mental condition," post at    , rather than, as the statute makes clear, serving as a defense.

justification or excuse for the touching; the defendant likewise could present evidence negating those elements.

Furthermore, reading the statute to mean only the conduct charged would result in absurd consequences. A person deemed competent to stand trial could be found not guilty by reason of insanity at trial, and the Commonwealth would be unable to designate that individual a sexually dangerous person, but an incompetent person charged with a sex offense, on virtually identical facts, would not be able to present evidence of a lack of criminal responsibility at a hearing under G. L. c. 123A, § 15, and could be deemed sexually dangerous. The Legislature could not have intended such disparate results for the same offense.

We therefore conclude that G. L. c. 123A, § 15, allows incompetent defendants to raise any defenses that they could raise in a criminal trial, including that of a lack of criminal responsibility.

3. Conclusion. The orders denying the defendant's motion to admit expert testimony and allowing the Commonwealth's motion to preclude that testimony are reversed, and the matter is remanded to the Superior Court for further proceedings consistent with this opinion.

So ordered.

KAFKER, J. (concurring, with whom Cypher, J., joins).  I have a very different understanding of the scope and purpose of a G. L. c. 123A, § 15, hearing.  General Laws, c. 123A, involves civil, not criminal, proceedings intended to determine sexual dangerousness, not whether the respondent would have been convicted of a crime.  More specifically, § 15 consists of a preliminary determination whether a person who has been found incompetent to stand trial "did commit the act or acts charged," not whether that person, if he or she had been competent to stand trial, would have been convicted of a crime for engaging in such actions or found not guilty by reason of insanity.  See G. L. c. 123A, § 15.  If a person subject to a § 15 hearing is found to have committed the act or acts charged, the court will then proceed to determine whether he or she suffers from a mental abnormality or personality disorder that makes him or her likely to engage in sexual offenses if not confined to a secure facility.  See G. L. c. 123A, §§ 1, 13, 14.  All of these determinations are designed to identify sexual dangerousness, not prove whether the respondent would have been either convicted of a crime or found not criminally responsible for the acts committed.  This distinction defines and circumscribes the evidence admissible in the sexually dangerous person (SDP) proceedings in general, and § 15 in particular.  Although I ultimately agree that the respondent is not precluded from

presenting evidence of a lack of criminal responsibility, as it provides the judge a fuller picture of the respondent's actions and over-all mental health, and may even simplify the § 15 inquiry, the judge has wide discretion to limit such evidence, as it is not directly relevant to the determinations at issue in the SDP process.

We have repeatedly emphasized the fundamental difference between criminal punishment and civil commitment of a sexually dangerous person, stating that a "G. L. c. 123A proceeding is neither criminal nor penal in nature, but is a civil proceeding to which constitutional rights afforded criminal defendants do not necessarily apply." Commonwealth v. Burgess, 450 Mass. 366, 374 (2008). We have likewise stressed that the purpose of G. L. c. 123A is not to punish individuals, but to "protect the public from sexually dangerous persons, and to provide them treatment, and rehabilitation." Commonwealth v. Bruno, 432 Mass. 489, 500 (2000). These fundamental distinctions inform our reading of § 15.

Ordinarily, criminal justice and civil commitment procedures are separate and distinct, and their relationship is relatively straightforward. A defendant is convicted of a sexual offense in a criminal trial and sentenced; six months before the defendant's release, the district attorney and Attorney General are notified, and if either finds the defendant

likely to be an SDP, either can petition the court to initiate SDP proceedings. See G. L. c. 123A, § 12. See also Bruno, 432 Mass. at 495. The Legislature astutely recognized, however, that some persons who may be sexually dangerous may also have been found incompetent to stand trial in their criminal case. The Legislature therefore designed § 15 to address this specific problem.

General Laws c. 123A, § 15, begins by stating:

"If a person who has been charged with a sexual offense has been found incompetent to stand trial and his commitment is sought and probable cause has been determined to exist [that the person is sexually dangerous], the court, without a jury, shall hear evidence and determine whether the person did commit the act or acts charged."

The text is carefully written. When referring to the criminal process in which the defendant has been found incompetent, it uses the word "offense." Id. But when it sets out the objective of a § 15 hearing, the statute makes no reference to the word "crime" or "offense," but rather refers only to the "act or acts" charged. Id. The next sentence of the statute then indicates that the "hearing on the issue of whether the person did commit the act or acts charged shall comply with all procedures specified in [G. L. c. 123A, §] 14, except with respect to trial by jury." Id. Again the Legislature uses the phrase "act or acts." The consistent use of the word "act," and not "crime" or "offense," throughout § 15 is significant and

done for a specific purpose.  See <u>Hartford Ins. Co</u>. v. <u>Hertz</u> <u>Corp</u>., 410 Mass. 279, 283 (1991) ("As a general rule, when the Legislature has employed specific language in one part of a statute, but not in another part which deals with the same topic, the earlier language should not be implied where it is not present").  The Legislature did not intend for § 15 to be the equivalent of, or a substitute for, a criminal trial.

In our prior cases, we have also expressly recognized the Legislature's focus on the acts themselves, not whether the respondent would have been convicted of a crime for engaging in the acts.  As we have previously explained, in a § 15 hearing, "the judge may make the predicate factual determinations regarding the <u>actions</u> that would ordinarily constitute a crime" (emphasis added).  <u>Commonwealth</u> v. <u>Nieves</u>, 446 Mass. 583, 590 n.6 (2006).  If the Legislature had intended for § 15 hearings to determine whether the person satisfied all of the elements of the crime, thereby transforming the SDP proceedings into the criminal case that could not take place due to the defendant's incompetence, it would have simply said so.

Although any comparison between the elements to be proved in a criminal case and the SDP process should be approached with caution, the repeated references to "act or acts" in § 15 is most aptly aligned with the actus reus element of a crime.  Cf. <u>Commonwealth</u> v. <u>Lopez</u>, 433 Mass. 722, 725 (2001) ("A fundamental

tenet of criminal law is that culpability requires a showing that the prohibited conduct [actus reus] was committed with the concomitant mental state [mens rea] prescribed for the offense").  The mens rea element is not the subject of the § 15 inquiry, as evidenced by the specific language utilized by the Legislature.  See Commonwealth v. Kennedy, 435 Mass. 527, 530 (2001) ("Where the statutory language is clear, courts apply the plain and ordinary meaning of that language").[1]  Finally, the subsequent inquiry to evaluate whether the person has a mental abnormality or personality disorder that renders him or her

_____

[1] The Legislature knows precisely how to craft an incompetency hearing designed to examine the different elements of a criminal offense, rather than solely the acts underlying that offense.  For example, when an incompetent defendant has been committed under G. L. c. 123, he or she may request an opportunity for a hearing under G. L. c. 123, § 17 (b), to determine whether there is "a lack of substantial evidence to support a conviction" of the offense for which the defendant has been indicted, warranting the dismissal of the indictment.  Unlike the language in G. L. c. 123A, § 15, which repeatedly uses the phrase "act or acts," the language in G. L. c. 123, § 17 (b), refers to "charges," "conviction," and "indictment." It also provides the incompetent person with the opportunity to "establish a defense of not guilty to the charges pending."  Id. Yet even this more traditional inquiry into the elements of a criminal offense expressly excludes "the defense of not guilty by reason of mental illness or mental defect."  Id.  In sum, the Legislature knows precisely how to define which elements of a criminal offense it wants examined in incompetency hearings and carefully limited the inquiry under G. L. c. 123A, § 15, to whether the individual committed the "act or acts charged," not whether the defendant can establish a legal defense to criminal conviction as it did under G. L. c. 123, § 17 (b).  G. L. c. 123A, § 15.  Under neither provision is not guilty by reason of mental illness or mental defect a defense.  See id.; G. L. c. 123, 17 (b).

sexually dangerous could not be more different from the proof required to satisfy the McHoul standard.  Compare G. L. c. 123A, § 1 (defining SDP to include person who has been "charged with a sexual offense and was determined to be incompetent to stand trial and who suffers from a mental abnormality or personality disorder which makes such person likely to engage in sexual offenses if not confined to a secure facility"), and Commonwealth v. McHoul, 352 Mass. 544, 546-547 (1967) (defendant will not be held criminally responsible if, at time of underlying conduct, defendant "lack[ed] substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law," due to mental disease or defect).

None of this is to suggest that the proof and procedures required to establish whether the person did commit the act or acts charged are anything less than rigorous, or that the respondent cannot present all relevant evidence to provide a full understanding of his or her actions or mental health. Proof of alibi, mistaken identity, or consent, which could affect a determination whether the person actually committed the prohibited conduct, is of course highly relevant.  The respondent may also choose, for example, not to contest that he or she committed the act or acts charged in the § 15 hearing, but to provide an explanation that, at the time, he or she

lacked substantial capacity either to appreciate the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law.  Although not a defense in the SDP process, it does provide the judge a better understanding of the respondent's actions and mental condition and may even simplify the § 15 hearing.  Such an approach also allows the respondent, if he or she so chooses, to proceed in the SDP process as he or she intends to proceed in the criminal process.

Allowing the respondent to introduce such evidence is consistent with the comprehensive process designed by the Legislature.  The statute provides that the "hearing on the issue of whether the person did commit the act or acts charged shall [also] comply with all procedures specified in [§] 14, except with respect to trial by jury."  G. L. c. 123A, § 15.  Those include the right to counsel and the right to retain experts or professionals to perform an examination.  See G. L. c. 123A, § 14.  "The Legislature also chose to import to a § 15 hearing the familiar 'beyond a reasonable doubt' standard."  Burgess, 450 Mass. at 374.  Moreover, the "rules of evidence applicable in criminal cases shall apply and all rights available to criminal defendants at criminal trials, other than the right not to be tried while incompetent, shall apply."  G. L. c. 123A, § 15.  None of these proof or procedural

requirements changes the fundamental purpose of a § 15 hearing: to determine whether the respondent "did commit the act or acts charged." Id. Nor does it transform a preliminary step in a civil commitment proceeding regarding sexual dangerousness into a criminal case requiring proof of all of the elements necessary to establish criminal liability. Indeed, § 15 concludes by reiterating that a § 15 hearing is not designed to determine criminal liability, stating that "[a]ny determination made under this section shall not be admissible in any subsequent criminal proceeding." Id. But these protections do caution against any unnecessary limitation on the evidence the respondent may choose to present.

In sum, the Legislature has proposed a thoughtful solution to the very difficult problem presented by a person who is incompetent to stand trial, but may still be sexually dangerous. As we have previously held, "it is beyond question that the Legislature has a compelling interest in protecting the public from sexually dangerous persons. That interest is not diminished when that person happens to be incompetent to stand trial." Burgess, 450 Mass. at 376. This is no less true when the individual might conceivably be not guilty by reason of insanity. Indeed, an incompetent person who did commit the act or acts charged and meets the mental abnormality or personality disorder requirements of sexual dangerousness, but who lacks

substantial capacity to appreciate the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of law, may be particularly likely to engage in future sexual offenses if not confined to a secure facility.  The Legislature recognized this possibility and drafted the SDP statute accordingly.  Section 15 does not bar the introduction of such evidence, but it also does not make such evidence a defense to being found to have committed the act or acts charged.